SUSAN M. CHEHARDY, Chief Judge.
|2This is a child custody dispute, in which the child’s father appeals two judgments: one that designated the parents as co-domiciliary parents with joint custody, and a second that found the mother’s and the father’s attorneys in contempt, and imposed penalties for the contempt. We affirm the custody judgment, but reverse the contempt judgment in part.
FACTS
Sean McCaffery and Christi L. McCaf-fery were married on October 5, 1992 and divorced on October 27, 2006.[1] Two children were born of their marriage, Dylan McCaffery and Molly McCaffery. Dylan is now an adult. The custody dispute now before us concerns custody of Molly only. At the time of the hearing now on appeal, Molly was 12 years old.
On April 2, 2007, the parties entered into a consent judgment that provided both parties would have “shared and equal care, custody, and control” of the minor children, but did not name a domiciliary parent. The consent judgment stated further, “If the parties are unable to agree on any visitation/physical custody, then the parties reserve their rights to seek judicial intervention and return to court.” |3The consent judgment also provided that neither party was to pay child support to the other, but stipulated that each party would be responsible to pay for 50 percent of school tuition, fees and costs; 50 percent of summer camp fees and costs; and 50 percent of non-covered medical expenses of the children.
On June 17, 2008, the court rendered a consent judgment on partition of the community property, by which the parties agreed that Christi McCaffery had received full ownership of the former family residence and that she agreed to refinance the property or take any necessary steps to remove Sean McCaffery’s name from the mortgage note at the earliest possible date, not to exceed 36 months. Christi further agreed to pay the mortgage note in a timely manner as long as Sean’s name remained on the mortgage. The parties stipulated that if Christi failed to remove Sean’s name from the mortgage within 36 months or failed to timely pay the mortgage note, Christi would sell the home.
On April 30, 2010, Sean filed a motion seeking to be designated as the domiciliary parent with primary physical custody, a motion for contempt against Christi for failure to pay her share of the children’s expenses (first contempt motion), and a motion for contempt for failure to pay the mortgage timely (second contempt motion).
On June 7, 2010, the court rendered a judgment that ordered Christi to pay Sean the sum of $3,350.00 by the end of the month to reimburse Sean for one-half of Dylan’s school tuition.
On July 8, 2010, Sean filed a third motion for contempt, alleging that Christi continued to fail to pay or to reimburse him for her one-half of the children’s expenses.
On November 19, 2010, the court issued an interim order that made Sean the domiciliary parent of Dylan and allowed Dylan to continue to reside solely with |4Sean. Both parties were named co-domiciliary *108 parents of Molly. Sean’s second motion for contempt (concerning removal of his name from the home mortgage) was declared moot, because Christi had listed the former family home for sale, and Christi was ordered to pay Sean the sum of $641.00 per month as child support for Dylan, retroactive to April 30, 2010.
On January 12, 2011, the court rendered an interim judgment in which both parties agreed to submit to a custody evaluation. Christi was held in contempt of court for non-payment of child support, and was ordered to pay Sean an additional $3,483.48 for one-half of the children’s expenses Sean had covered himself, and $1,000.00 in attorney’s fees, plus costs. The judgment ordered an income assignment for Christi’s future child support payments.
The January 12, 2011 interim judgment denied Sean’s motion for contempt concerning Christi’s failure to timely pay the mortgage on the former family home. The court found that although Christi agreed she had been untimely in her payments, she was not in contempt under the terms of the consent judgment, because she had listed the house for sale in May 2010, and had accepted the only offer she received, a lease-purchase offer.
On February 15, 2011, the trial court upheld the contempt finding against Christi for nonpayment of child support, and rendered an executory judgment against her in the amount of $4,400.00, representing the amounts due for reimbursement of expenses in the amount of $3,500.00, plus attorney’s fees of $750.00, and court costs of $150.00. That judgment also rescinded Christi’s income assignment and ordered her to pay $1,500.00 per month towards the executory amount, beginning on March 15, 2011.
On April 19, 2011, Sean filed several more motions against Christi: a fourth motion for contempt for failure to pay child support, a fifth motion for contempt jjfor failure to consult with him in obtaining a therapist for Dylan, a sixth motion for contempt for failure to pay her portion of Dylan’s tuition, and a motion for the court to name a custody evaluator pursuant to the consent judgment.
In compliance with the January 12, 2011 judgment, in which both parties agreed to submit to a custody evaluation, the parties subsequently agreed to the appointment of Dr. Stephen Thompson as the court’s custody expert. In his custody evaluation report dated June 18, 2012, Dr. Thompson recommended to the court that Sean be designated as the domiciliary parent of Molly with primary physical custody, assigning visitation to Christi every other weekend and one overnight visit every week.
On October 16, 2012, Sean filed a motion to set a hearing on his motion to be designated as domiciliary parent with primary physical custody, along with a second motion to enforce the partition judgment concerning removing his name from the mortgage on the former family home since the 36-month deadline had passed, and another motion for contempt for Christi’s continued failure to pay child support.
On January 10, 2013, Sean filed an updated supplement to his motion to be designated as domiciliary parent with primary physical custody. In the supplement, he alleged that Christi’s actions had a negative effect on Molly and further warranted his being designated as the domiciliary parent with primary physical custody.
Also on January 10, 2013, an interim judgment was rendered on Sean’s fourth motion for contempt, holding Christi in contempt for failing to pay child support and ordering her to pay Sean $7,692.00 in back child support.
*109 On March 6, 2013, the district court judge conducted a status conference with counsel for both parties, at which time the court formally appointed Dr. ^Thompson as the court’s custody evaluator and ordered him to update his June 2012 evalúation, findings, and recommendations, if necessary. The court subsequently ordered that the custody evaluation be maintained under seal in the judge’s chambers.
On March 12, 2013, Christi filed a motion to be designated primary domiciliary parent.
In compliance with the March 6, 2013 judgment, Dr. Thompson met again with both parties, met with Molly on two occasions accompanied by each parent separately, and completed an updated custody evaluation report on March 25, 2013. In his updated report and recommendations, Dr. Thompson again recommended that Sean be designated as the domiciliary parent of Molly with primary physical custody and awarding visitation every other weekend and one overnight every week to Christi.
On March 26, 2013, after denying Christi’s objection to the domestic commissioner’s order denying her exceptions, the court commenced the hearing on Sean’s motion to be designated as the domiciliary parent with primary physical custody.
Dr. Thompson’s custody evaluation reports of June 18, 2012 and March 25, 2012, which included Dr. Brian Murphy’s psychological evaluation of Christi dated September 14, 2011 and his psychological evaluation of Sean dated August 9, 2011, were both admitted into evidence without objection.
Dr. Thompson testified as follows: Dylan had advised him that his mother had withdrawn money from an account that had been set aside in his name for his education post high school and never returned it. An OCS[2] complaint had been filed against Sean’s current wife, but Dr. Thompson had been shown documentary | ./evidence that OCS did not find anything worthy of making a report or any further investigation. During the course of the litigation, Christi had made domestic violence claims against Sean, alleging the incidents took place in the presence of Molly. Molly, however, denied those allegations to her therapist. Christi had denied having women sleep at her house, but that claim was later contradicted by both Molly and Dylan. Christi had given Molly permission to go with Christi’s friend to play neighborhood pranks such as ringing doorbells then running off, and papering houses with toilet paper. Christi was critical of Molly’s choice to become a Catholic altar server, and of her acceptance of the Pope, contrary to her claims that the parties agreed on everything, including religion. Christi took Molly with her when she spent the night at a friend’s house, left Molly to sleep on the downstairs couch, and did not respond to repeated text messages from Molly during the night.
Dr. Thompson further testified that Christi withheld Sean’s cherished childhood possessions from him during the litigation, but gave most of them away to charity despite Sean’s repeated requests for them. Sean’s new wife or Christi’s mother lent Christi money to cover Christi’s portion of Dylan’s tuition. The only reason the children were able to participate in activities was because Sean paid for 100 percent of most of those activities. Christi, however, refused to help Dylan pay for his high-school class ring and let-terman’s jacket. When asked, he responded, “[s]he couldn’t afford it,” despite that *110 the parties earned nearly the same amount of salary. Sean had over-extended himself by signing to refinance the family home during the divorce proceedings when he did not need to, so that their children could remain in the family home with Christi. Molly was reaching the same age when Dylan started experiencing tension in his relationship with his |smother, namely 13 to 14 years of age. Dr. Thompson opined that Sean was the “preferred recommended domiciliary parent.”
Christi McCaffery testified that she advised the children of her change in sexual orientation without consulting with Sean or letting him in on the dialogue. She told Dylan about six months prior to the hearing that his father cheated on her during the marriage. After Sean filed his motion to be designated the domiciliary parent, Christi moved from the former family home to her aunt’s house. There she rented a loft and a separate space in the house from her in November of 2010, then moved from her aunt’s house to her girlfriend’s house in November of 2012. She said the aunt asked her to leave because the aunt’s son and his family needed a place to stay. Molly was upset when they had to unexpectedly leave Christi’s aunt’s house.
Christi testified further that she took Molly when she spent the night at her girlfriend’s house on August 10, 2012. She admitted she had received many texts from Molly that night, but did not realize it at the time because she was sleeping. She said she did not know why Molly did not just come upstairs and knock on the door where she and her girlfriend were sleeping. Molly had told her that she did not want to move into Christi’s girlfriend’s house and was uncomfortable with it.
Christi admitted she had been ordered to pay expenses for Molly, to pay tuition, and to pay child support, but admitted she stopped paying child support immediately after leaving a hearing in which the court warned her that if she continue to generate arrearages then she would be at risk of facing another rule for contempt. She admitted emptying Dylan’s bank account, but said she had paid it back.
Christi denied pawning Molly’s jewelry, but did not dispute records from a jewelry store that identified her as having pawned a bracelet with Molly’s name on | nit. She said she could not recall half the items she pawned. She admitted she had two gym memberships at the same time Sean was seeking reimbursement for the children’s expenses, but she claimed that one of them was a temporary free trial. She told Molly that her father didn’t want her to be at her birthday party. She denied telling Molly that the Catholic Church protects pedophiles, but then claimed Molly may have overheard a conversation in which she said, “I’m sure I said that the church seems to protect pedophiles.” She took Molly to the racetrack the night before she went on her high school admission interview, but said Molly was in bed by 10 p.m.
Christi admitted that Molly’s grades fell after Christi moved into her girlfriend’s home. Christi denied that had an effect on Molly, but acknowledged that any move is strenuous or stressful. She admitted that after Molly’s school informed her that Molly wasn’t doing her homework, she said it was Molly’s responsibility to do homework. After the trial judge questioned Christi on her supervision, she retracted the statement by saying it was also her responsibility. She also pointed out that in the semester preceding the custody hearing, Molly’s grades had improved to her prior high level.
Christi admitted that she had come home intoxicated one night when Dylan was 14 years old, and on another occasion she had returned home from a bar with a black eye, but she said those incidents *111 occurred “a couple of years, at least three or four years ago.”
Sean McCaffery testified as follows: After he and (his then-fiancée, now-wife) Jana moved in together, Christi stopped paying for her portion of the children’s expenses, and he couldn’t afford everything. Christi then started saying disparaging things about Jana. When Christi could not come up with an answer during an argument, she would tell him, “You miss me, you still love me.” |inChristi’s claiming that Sean still loved her, saying negative things about Jana, and not taking care of her own kids, caused problems in his relationship with Jana. Jana stepped in a few times to cover expenses for Dylan and Molly when Sean did not have the money, and Jana’s mother lent Christi her portion of the children’s tuition. Christi signed a note agreeing to repay the loan at the rate of $100 a month with no interest charge. Christi, however, was late in making payments; so the relationship between Jana and Christi grew worse.
Sean testified further that once when he went to Christi’s house to drop off or pick up something from Molly, Christi started yelling at him, pushed him back toward the door, slammed the door on him, started yelling at Molly for opening the door for him, and then had her attorney send a letter accusing Sean of striking her. When their family counselor, Diana Carroll, met with Molly regarding the incident, Molly denied that her father ever struck her mother. Sean testified the allegation could have cost him his job and career as a state trooper. He stated the incident and allegation occurred after he filed for designation as domiciliary parent.
Sean testified that by referring to the teachers’ homework log, he saw that Molly was failing to turn in homework on days after she had spent the night with her mother. There had been about 20 incidents in the last three years. He noted that Molly gets “retentions” when that happens, which require her either to stay after school or to come early to school.
Sean testified further that Molly kept begging her mother to allow her to be an altar server at church, but Christi kept telling her no. He said Molly has stated that after Pope Benedict retired, Christi told her the Pope and the Catholic Church protect pedophiles. He also testified that Christi has taken Molly to services of other church denominations instead of going to a Catholic Mass, although he and In Christi previously had always agreed that Molly would be raised Catholic. Sean said he has concerns about what Christi is telling Molly, given that she has been raised as a Catholic and is attending Catholic school. He stated that Molly broke down crying because Christi wanted to go boating, instead of taking Molly to her first Mass as an altar server. He said further that he had taken Molly to Mass when Christi wouldn’t, but he stopped doing that as a result of Christi not allowing him, and because of her accusations against him.
Sean testified further that Molly told him she did not want to move to the home of Roxanne, Christi’s girlfriend. He said that when he found Molly had transmitted numerous texts to her mother in one night, Molly advised him she was at Roxanne’s house sleeping on the couch while her mother was sleeping in the bedroom with Roxanne, and that did cause her some stress and strain. Since Christi moved in with Roxanne, Molly has called him twice asking to be picked up. Once she could not express why; both times he told Molly that he needed to speak to her mother, and Christi told him it was because they were fighting. He said both incidents happened after November of 2012.
Sean testified that Christi acknowledged and defended allowing several of her *112 guests to take Molly into the neighborhood to ring doorbells, knock on doors, and run. Molly told Sean she was “freaked out” because they had been chased by a man. He also said that if Christi did not get the response she wanted from him, she would involve Molly to get what she wanted. As an example, he said she used Molly to get herself, her family, and her friends invited to the separate birthday party he gave for Molly.
Sean testified he once observed Christi raising her balled fist inches away from Jana’s face. He said he stopped talking to Christi on the phone after she accused him of striking her, because he wanted everything to be in writing and on |1zthe record. He said Christi’s failure to properly support Molly forced him to pick up the burden so Molly could do things and be successful. He believes the incidents he related as to why he communicates only in writing with Christi have affected Molly and that she has been traumatized by them. As an example, he testified, Christi placed a telephone conversation with him on speakerphone so that Molly, who was with Christi, could listen to them argue without his knowledge.
ACTION OF THE TRIAL COURT
At the conclusion of the hearing on March 26, 2013, the trial court rendered a judgment that designated both parties as co-domiciliary parents, ordered the parties to submit a joint custody implementation plan by a specified deadline, ordered the parties to select a parenting coordinator and to split the cost of the parenting coordinator “fifty-fifty,” and denied Sean’s request for primary physical custody, refusing to alter the physical custody schedule.
In oral reasons for judgment, the judge stated in pertinent part:
Now, in terms of altering the time that the child shall spend with one parent versus another ..., this Court has not been ... presented ... with any evidence suggesting the child has been subjected to a harmful environment on the part of either of these parents, in effect a material change in circumstances. The method by which ... Mr. McCaffery comes to court today, seeking a change based upon his claim of a material change in circumstances is paradoxically challenged by the fact that Mr. McCaffery and Ms. Christi McCaf-fery have followed the same game plan for at least two years, if not longer, in getting Molly to a point to where she receives such high praise by Dr. Thompson.
Dr. Thompson’s report, among other things, ... indicates that she, Ms. Molly, apart from being delightful and bright and intelligent, all right, enjoys splitting her time with mom and dad. She expresses, according to the report, not that she dislikes mom’s significant other or dad’s wife, all right, but instead she regards them as impediment, each as an impediment to be able to spend more time with her parents.
liaWe’re not talking dislike her necessarily, remember this is an interpretation of what comes from the mouth of a 12-year-old. So you have to understand that world. But, this is a young lady who misses dearly and loves dearly both mom and dad and apparently would rather not have to share dad and mom with those folks, your wife, Mr. McCaf-fery, your significant other, okay, she doesn’t want to share them with you, she wants you all to herself, that’s the way it comes out.
Now, in my old fashioned mind what that means to me is not that Ms. Roxanne is a bad person or that Ms. Jana is a bad person, all right, but that this child loves you very much and apparent *113 ly needs you both. Whatever you’ve been doing keep doing it, that’s all I can tell you. It doesn’t get any better than that.
This is the most positive example of a well-loved child that I’ve ever read about.
On May 3, 2013, the court held another hearing to consider the parties’ objections to the hearing officer’s recommendations that were made an order of the court on January 10, 2013. On May 3, 2013, the trial court upheld the recommendations, finding Christi in contempt for the nonpayment of child support in the amount of $7,692.00, and ordering her to pay Sean $750.00 in attorney’s fees and costs in the amount of $100.00. The court also took up the March 26 finding of contempt against Sean’s attorney, Brett Bonin, and fined Mr. Bonin $100.00.
Sean has appealed both the March 26, 2013 judgment and the May 3, 2013 judgment.
ASSIGNMENTS OF ERROR
On appeal Sean raises six assignments of error, four regarding the custody issues and two regarding the contempt issues.
Motion to Strike
We first address Christi’s motion to strike an exhibit attached to Sean’s brief.
| uDuring the hearing, Sean’s counsel reserved the right to proffer the testimony of Dylan McCaffery. On appeal, Sean attached to his brief, as Exhibit E, an affidavit by Dylan dated December 2, 2013 (two days before his appellate brief was filed in this Court). Sean explained in his brief that when the parties’ attorneys were in chambers with the trial judge, the judge asked that Dylan’s testimony be submitted by affidavit to be attached to any appeal, so that the judge could let his court reporter go for the day.
Christi filed a Motion to Strike in this Court, seeking to have Sean’s Exhibit E stricken from his brief, on the grounds it is not part of the trial court record. It was not appropriately proffered, and it is inadmissible hearsay.
We find merit in all these grounds. No testimony by or affidavit of Dylan was introduced at trial. Although Sean’s counsel advised the trial judge that he wished to make a proffer of a statement by Dylan, no proffer was made. As stated in the motion to strike, the proper procedure to proffer testimony during or after a trial is to take testimony before the court reporter without the judge or jury, with opposing counsel present, giving opposing counsel the opportunity to cross-examine the witness. Because the witness was not subject to cross-examination and opposing counsel was not given the opportunity to cross-examine the witness, this affidavit is hearsay. The hearing was held on March 26, 2013, but the affidavit was not executed until December 2, 2013, almost nine months after the hearing. Consequently, the affidavit is not part of the record to be reviewed.
Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Denoux v. Vessel Mgmt. Services, Inc., 2007-2143, p. 6 (La.5/21/08), 983 So.2d 84, 88. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. Id. Appellate courts are courts of record and may not review 11fievidence that is not in the appellate record, or receive new evidence. Id.; La. C.C.P. art. 2164.
We agree that Exhibit E cannot be considered on appeal. Accordingly, the Motion to Strike Exhibit E of the Appellant’s Brief is granted.
*114 Custody
In his first assignment of error Sean asserts, “The Trial Court erred in issuing findings, reaching conclusions, and issuing its final decision in the middle of a hearing and prior to hearing all of the evidence and testimony, thus, the standard of review should be de novo because the fact finding process was fatally flawed.” He complains further that the court erred in “suggesting that Mr. McCaffery’s Counsel was going to ask questions merely to make a record as if what Mr. McCaffery said would not matter to the Court in the middle of a hearing and prior to hearing all of the evidence and testimony.” He states further,
As a result of the Court’s failure to properly hear all of the evidence and testimony prior to announcing how it would rule on fact issues and final determinations, the March 26, 2013 Judgment of the trial court should be reversed, this Honorable Court should review the record, evidence, and testimony de novo in light of Civil Code Article 131 and 134 and issue its own Judgment on Mr. McCaffery’s request to be designated the domiciliary parent with primary physical custody based on what is in Molly’s best interest.
The rule regarding de novo review was set by the Louisiana Supreme Court follows:
[W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a |1fiparty of substantial rights. When such a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. [Citations omitted.]
Evans v. Lungrin, 97-541, 97-577, pp. 6-7 (La.2/6/98), 708 So.2d 731, 735.
Sean cites the following comments by the trial judge as evidence that the judge improperly made up his mind before hearing all the evidence, announced how he was going to rule in the midst of the hearing, and suggested that Sean’s counsel was asking questions simply to make a record for appeal:
The events that would lead up to and cause me to conclude a material change in circumstances, those events have not occurred as it relates to Molly.
[A]s I pointed out in chambers, that your client has been one hell of a parent and this lady has been one hell of a parent.
By the end of this day when this hearing conclusions [sic], and Lord help me, I hope it concludes by the end of this day, at least this part of it, I’m going to order, okay, domiciliary status.
And the way it’s going to be ordered is going to present a challenge to both of you. But, since you both are wishing for it, you’re going to get what you wished for, okay.
Thank you for spending time with me. Your lawyer wants to ask you questions to make a record as he’s entitled to do.
In his second assignment of error, Sean contends that the trial court erred in holding that it needed to find a change in circumstances to appoint Mr. McCaffery *115 as the domiciliary parent, when no domiciliary parent had ever been designated.
In his third assignment of error, Sean contends the trial court erred in holding that it could not modify the visitation schedule without a finding of a material change in circumstances, when the parties had reserved their right to seek judicial intervention if they were unable to agree on visitation or physical custody.
|17In his fourth assignment of error, Sean argues that if a material change in circumstances is deemed necessary to change the visitation or physical custody schedule, the trial court erred in not finding a material change in circumstances given the record in this matter.
In the second, third and fourth assignments, Sean also argues the trial court erred in failing to issue a judgment based on the court-appointed custody evaluator’s recommendations.
We agree that the trial court erred in pronouncing his decision before Sean had presented all of his case. However, we do not find the trial court’s premature pronouncements prejudiced Sean’s case. His counsel was permitted to continue presenting evidence to support Sean’s claims. Accordingly, it is not necessary for us to conduct a de novo review. Instead we conduct a normal review, applying the standards of manifest error to factual findings and abuse of discretion to other determinations.
The primary consideration in a determination of child custody is the best interest of the child. La. C.C. art. 131; Mulkey v. Mulkey, 2012-2709, pp. 9-10 (La.5/7/13), 118 So.3d 357, 364. The best interest of the child rule applies in actions to change custody as well as in those to initially set it. Gray v. Gray, 2011-548, p. 19 (La.7/1/11), 65 So.3d 1247, 1258.
In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.
La. C.C. art. 132.
When joint custody is decreed, the court shall designate a domiciliary parent, defined as “the parent with whom the child shall primarily reside,” and who has | ^“authority to make all decisions affecting the child unless an implementation order provides otherwise.” La. R.S. 9:335(B)(2)-(3). “If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title YII of Book I of the Civil Code.” La. R.S. 9:335(C).
When joint custody is decreed, “[t]o the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.” La. R.S. 9:335(A)(2)(b).
The burden of proof for a parent seeking a change in a custody arrangement differs, depending on whether the prior custody award was made by a considered decree or by a consent judgment:
A “considered decree” is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Once a considered decree has been rendered, the proponent of the change bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or *116 that harm likely caused by a change of environment is substantially outweighed by its advantages to the child.
A consent decree, on the other hand, is one in which no evidence of parental fitness is presented. In such a case, the heavy burden of proof rule enunciated in Bergeron does not apply. Rather, a party seeking a modification of a consent decree must prove that there has been a material change of circumstances since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child. [Citations omitted.]
Silbernagel v. Silbernagel, 10-267, pp. 6-7 (La.App. 5 Cir. 5/10/11), 65 So.3d 724, 728.
|13With respect to Christi, in his oral reasons for judgment the trial judge stated,
I’m impressed that she’s a decent person. I’m impressed that no one in this courtroom has ever called her an unfit mom regarding Molly, that’s never been in this conflict at all mentioned today, nor does it appear in any of the paperwork that I’ve seen. Nor is there an allegation that she’s strange, that she’s bizarre, that she doesn’t fit in our society or in our world, that doesn’t appear anywhere, except maybe in the imaginations of some people who maybe haven’t learned to get past their own demons.
An award of child custody is not a tool to regulate human behavior. Cleeton v. Cleeton, 383 So.2d 1231, 1236 (La.1979) (on rehearing). Every child custody case must be viewed within its own peculiar set of facts. Connelly v. Connelly, 94-0527, p. 4 (LaApp. 1 Cir. 10/7/94), 644 So.2d 789, 793. The paramount consideration in any determination of child custody is the best interest of the child. Evans, Supra, 708 So.2d at 738.
The trial judge is in the best position to ascertain the best interest of the child within each unique set of circumstances. Accordingly, a trial court’s determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Thompson v. Thompson, 532 So.2d 101, 101 (La.1988) (per curiam).
We find the standard to be applied is whether Sean has proven there was a material change of circumstances since the April 2, 2007 consent judgment. The language on which Sean relies as exempting him from that burden of proof[3] does not in fact state the burden of proof would be changed. Rather, it merely states what is already the law: parties to an agreement can seek judicial intervention if they cannot agree on some not-yet-specified aspect of the judgment.
| snAfter scrutinizing the record and the transcript of this proceeding, we neither find manifest error nor abuse of discretion in the trial court’s determination that Sean has not shown a material change of circumstances as to Molly individually that would justify a change in the custody arrangements. We agree with the court’s ruling that the parties should be co-domiciliary parents with joint custody, subject to a joint custody implementation plan and the advice of a parenting coordinator.
With respect to Sean’s claim that the trial court erred in not following the recommendations of the court’s custody evaluator, Dr. Thompson, we note that “the trial court is not bound by the testimony of an expert; rather, expert testimony is to be weighed the same as any other evidence.” McFall v. Armstrong, 10-1041, p. 8 (La. *117 App. 5 Cir. 9/13/11), 75 So.3d 30, 36-37. “A trial court may accept or reject in whole or in part the opinion expressed by an expert.” Id. “The effect and weight to be given to expert testimony is within the broad discretion of the trial judge.” Id.; see also, In re M.S.E., 12-553, p. 26 (La. App. 5 Cir. 3/13/13), 113 So.3d 327, 341.
Considering those principles, we find no abuse of discretion in the trial court’s rejection of Dr. Thompson’s recommendations.
Contempt
Sean’s last two assignments of error concern his appeal of the contempt ruling against Christi and against his attorney. In reviewing these rulings, we bear in mind that the trial court is vested with great discretion regarding rulings on contempt. See, e.g., City of Kenner v. Jumonville, 97-125, 97-210, 97-602 p. 11 (La.App. 5 Cir. 8/27/97), 701 So.2d 223, 230, writ denied, 97-2890 (La.1/30/98), 709 So.2d 718,
Cert. denied, 524 U.S. 953, 118 S.Ct. 2371, 141 L.Ed.2d 739 (1998).
| ^Contempt against Sean’s Counsel
In assignment of error number five, Sean asserts:
The Trial Court erred in holding Counsel for Mr. McCaffery in contempt for asking a general question concerning requests to stop private schooling and erred in holding that contempt over Counsel’s head for two hearings. The contempt judgment should be reversed and the Court’s Judgment of March 26, 2013 should be reversed as a result of the profound effect it had on limiting Mr. McCaffery’s representation.
In fact, we note that the trial judge’s complaint was that Sean’s attorney’s line of questioning kept going beyond what the judge deemed necessary; the judge desired that the questions be limited specifically to matters concerning Molly. He said, “I want to know ... why things have changed so much, ... materially I might add, to use an expression used by the court, that I need to change a child’s relationship by law with her parents, a child who seemingly is not at this point in time in any need of help.” The court admonished Mr. Bonin, Sean’s counsel, repeatedly on that point.
Mr. Bonin responded he felt his questions were necessary to make a full record of Sean’s case against Christi. The transcript indicates Mr. Bonin maintained respectful language toward the judge at all times.
Under the circumstances, having reviewed the transcript carefully, we find the trial court abused its discretion. We reverse the contempt ruling and the fine assessed against Mr. Bonin.

Contempt against Christi

In his assignment of error number six, Sean contends the trial court erred in its contempt ruling against Christi on May 3, 2013, because this was the second time Christi had been held in contempt for failure to pay child support and the third time a child support arrearage was for a large amount. Sean argues he should ^receive a higher attorney’s fee award and Christi should have received a fine and jail time.
Again, referring the abuse-of-discretion standard, we find no abuse such as to warrant our imposing harsher penalties on Christi than the trial court thought necessary. We make no change in the contempt ruling against Christi.
DECREE
For the foregoing reasons, the judgment of March 26, 2013 is affirmed. The judgment of May 3, 2013 is affirmed with respect to the contempt ruling and penalties against defendant, Christi L. McCaffery.
*118 The judgment of May 3, 2013 is reversed with respect to the contempt ruling and penalties against counsel for the plaintiff, Mr. Brett Bonin. The parties are cast with their own costs for this appeal.

JUDGMENT OF MARCH 26, 2013 AFFIRMED; JUDGMENT OF MAY 3, 2013 AFFIRMED IN PART AND REVERSED IN PART.

. Because the parties and their children, as well as the father’s current wife, all bear the last name McCaffery, we use the parties' first names in most of this opinion to avoid repetitious use of the last name.

. “OCS" refers to the state’s former Office of Children’s Services, now known as the Department of Children and Family Services or DCFS.

. “If the parties are unable to agree on any visitation/physical custody, then the parties reserve their rights to seek judicial intervention and return to court.”