COX, J.
11 Appellant and Appellee are the parents of Adalyn Freeman. Shortly after the birth of their daughter in 2012, a considered decree was entered in Natchitoches Parish. No domiciliary status was awarded at the time.
Appellee later relocated to Richland Parish and sought modification of the custody agreement and requested to be named the domiciliary parent. The Appel-lee’s request was granted after a hearing officer conference was conducted, but the Appellant opposed the hearing officer’s recommendation and the matter was set for trial. The trial court maintained the order of the hearing officer, awarding domiciliary status to Appellee.
Appellant now appeals. For the following reasons, we affirm the judgment of the trial court.
FACTS
Randy Freeman, Jr. (“Mr. Freeman”) and Adrena Johnson (“Ms. Johnson”) are the parents of Adalyn Freeman (“Addy”), born September 1, 2012. A Considered Decree regarding custody of the minor child and child support was entered on October 23, 2013, in Natchitoches Parish. The decree awarded the parties joint custody of the minor child and specified that there was no designation of a domiciliary parent at the time. The decree stated that the parties would alternate physical custody of the minor child on alternate weeks, with the exchange taking place on Sunday at 4:00 p.m.
Sometime after the agreement, Mr. Freeman remarried and moved to Rich-land Parish with his new wife. Ms. Johnson currently lives in Baton Rouge.
On August 17, 2015, Mr. Freeman sought to make the Natchitoches Parish judgment executory in Richland Parish and requested that it be ^modified to designate him as the domiciliary parent, with the child to reside primarily with him. Mr. Freeman also requested a finding of contempt against Ms. Johnson.
In response to his motion, Ms. Johnson filed an exception of improper venue and motion for appropriate sanctions, reasonable attorney’s fees, and expenses. That exception was denied. Additionally, Ms. Johnson brought a matter to the Family Court in Baton Rouge, which ultimately ended with her being sanctioned $5,000.00. As of the date of Mr. Freeman’s brief filed with this Court, Ms. Johnson had still not paid that amount.
A Hearing Officer Conference was conducted on April 26, 2016. The Hearing Officer recommended that the existing custody order be modified and that the parties be awarded joint custody of the minor child, with Mr. Freeman designated as the domiciliary parent. On June 1, 2016, Ms. Johnson filed an opposition to recommendation of hearing officer, and trial was set for September 29,2016.
At trial, Mr. Freeman testified that he had lived in Rayville for three years. He had been married to his current wife, Laura Wood, for two years and shared a four-month-old daughter with her named Laila. Laura Wood also has an eleven-year-old daughter, Lalana, from a previous relationship. Additionally, Mr. Freeman has a two-year-old daughter, Aria, from a previous relationship. Mr. Freeman testified that he *527 and Aria’s mother have a good relationship. He stated that he pays child support, although the two do not have a written custody agreement. Mr. Freeman testified that he has a college fund set up for each of his four daughters.
At the time of trial, Mr. Freeman had been employed at Hertz Rental Car as the area manager for six years. He testified that his wife was an | ^independent contractor with State Farm Insurance in Rayville. With their combined incomes, Mr. Freeman stated that they have never had trouble paying their bills and have always paid on time.
Mr. Freeman testified that his family attends Christ Church in West Monroe. They live in a four bedroom home, where Addy has her own bedroom with bunk beds, which she shares with Aria when she comes to visit. Mr. Freeman introduced evidence showing that his daughter was enrolled in tumbling classes. Additionally, Mr. Freeman showed evidence that Addy was on his insurance plan. Mr. Freeman stated that he found a doctor and dentist for his daughter in the Rayville area, and upon learning that his daughter needed glasses, he also found her an eye doctor.
Mr. Freeman testified that he had enrolled Addy in Start Elementary with his wife’s oldest daughter, Lalana. He testified that Addy loved the school and was doing well. He also stated that she was involved in cheerleading at the school. Mr. Freeman stated that he liked the school because it allowed him to bring Addy every other week per the custody arrangement at the time with Ms. Johnson.
Mr. Freeman testified that he began the Richland Parish litigation after Ms. Johnson enrolled their daughter in a school located in Baton Rouge. He stated that Ms. Johnson never gave him any information about the school. He only found out about the school because Ms. Johnson’s tuition check bounced, and the school called him asking for payment. Upon confronting Ms. Johnson, Mr. Freeman testified that she refused to return their daughter. Mr. Freeman stated that after this conversation, he did not see his daughter for three months. He did, however, continue to pay child support.
LMr. Freeman testified that he communicates with Ms. Johnson about their daughter and also shares pictures with her. According to Mr. Freeman, however, his wife and Ms. Johnson do not get along.
With regard to Mr. Freeman’s move to Rayville, he stated that he notified Ms. Johnson of the move. No written documents were exchanged, but he testified that Ms. Johnson agreed to the move, and the two agreed on a new meeting place for the exchange. Mr. Freeman stated they had been exchanging Addy at the new location for roughly two years.
Mr. Freeman testified that he and Ms. Johnson agree on one thing—their daughter needs to be with one parent primarily during the school year. Mr. Freeman believed that he offered the most stable environment to raise his daughter, as Ms. Johnson had moved three times since living in Baton Rouge and had also frequently changed jobs. Although Mr. Freeman does not doubt that Ms. Johnson loves their daughter, he believed he was in a better situation to take care of her at the time.
Mr. Freeman’s wife and mother corroborated his testimony.
Ms. Johnson testified that she enrolled her daughter at the school in Baton Rouge under the advice of her previous attorney. She stated that this was the first time she had not followed a court order and that it would never happen again.
*528 Ms. Johnson, testified that she moved to different apartments because the rent had increased and she is a single parent. Sh.e also testified that she changed jobs because it allowed her to have regular working hours :with weekends off and gave her a more dependable income. Ms. Johnson stated that she was currently a fifth grade teacher at Celerity Charter School where she earned $44,600 per year. With her new job, Ms. Johnson testified that shej was in a better situation to take care of and fully provide for Addy.
With regard to Mr. Freeman’s move to Rayville, Ms. Johnson testified that she did not initially agree to the new meeting place where they would exchange Addy because it was not part of their agreement. However, after arguing back and forth, Ms. Johnson stated that she agreed to the new meeting place because she still wanted Addy to see her-father. Ms. Johnson contended that she has always been willing to promote a close relationship between Mr. Freeman and their daughter.
On cross-examination, Ms. Johnson admitted to not having paid Mr. Freeman the $5,000.00 sanction from Family Court in Batons Rouge. Additionally, several text messages .were introduced at trial, one in which Ms. Johnson stated, “[E]ven though I make more money now it doesn’t seem like it, I can’t catch a break.., I am barely making rent every month ... I’m tired, exhausted and I’m trying to be happy and it just isn’t working.” Another text message read, “I want him to agree to giving me Adalyn legally and he' get visitation and pay me proper amount of CS before he’s outed. Okay, I even want to threaten Laura but I’ve been trying to figure out a way to do it.” Ms. Johnson also conceded that she had moved Addy to four different schools in the four years they have lived in Baton Rouge.
Gilda. Johnson, Ms. Johnson’s, mother, also testified at trial.: She stated that Ms, Johnson and Addy have.-a great relationship. Gilda testified that Ms. Johnson.lived in an apartment where Addy had her own bedroom. She stated that she. was aware Ms. Johnson , had changed apartments and jobs a few times, but to her knowledge, it was always to move to a better apartment or a better job. Additionally, Gilda testified that Ms, Johnson attends church regularly and takes Addy when she has her for the week. If , Ms. Johnson ever Rneeded help with Addy, Gilda stated, that she would always help support her.
.On. crossrexamination, Gilda testified that her daughter had struggled financially since moving to Baton Rouge. She stated that her daughter had bounced checks and had to .moye residences because she could not afford the rent. She also testified that Addy had to change schools in Baton Rouge because Ms. Johnson could not afford the tuition.
After healing the evidence presented by both parties, the Fifth Judicial District Court ordered that Mr, Freeman be granted primary- domiciliary, custody of the minor child with Ms. Johnson being awarded joint custody every other, weekend, with the parties to make the .exchange in Natchez, Mississippi., The judgment also ordered Ms. Johnson to pay $350,00 in child support nine months out of the year. Additionally, Judge Stephens found Ms. Johnson in contempt of the prior orders and judgment of the court and ordered her to pay $750.00, plus court costs.
On December 9, 2016, Ms. Johnson filed an order,for appeal.
LAW
A “considered decree” is an award of permanent custody in which the trial.court receives evidence of parental fitness to exercise care, custody, and con- *529 tool of children. McCaffery v. McCaffery, 13-692 (La. App. 5 Cir. 4/9/14), 140 So.3d 105, writ denied, 2014-0981 (La. 6/13/14), 141 So.3d 273. When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986). In addition, “when a party seeks to change custody rendered in a considered decree, the proponent of change must not only show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she must also meet the burden of proof .set forth in Bergeron." Jaligam v. Pochampally, 2016-0249 (La. App. 4 Cir. 12/7/16), 206 So.3d 298, reh’g denied (Jan. 9, 2017), writ denied, 2017-0255 (La. 3/13/17), 216 So.3d 804, citing Mulkey v. Mulkey, 2012-2709 (La. 5/7/13), 118 So.3d 357.
According to Mulkey, supra, the primary consideration in a determination of child custody is the best interest of the child. La. Civ. Code art. 131. This applies not only in actions setting custody initially, but also in actions to change custody. Mul-key, supra. In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. La. Civ. Code art. 132. The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other ma- • terial needs-.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
h(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express - a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
La. Civ. Code art. 134.
Every child custody case must be viewed within its own peculiar set of facts. McCaffery, supra. “The trial judge is in the best position to ascertain the best in *530 terest of the child within each unique set of circumstances.” Id. Thus, a trial court’s determination of custody is entitled to great weight, and it will not be disturbed on appeal absent a clear abuse of discretion. Lee v. Lee, 34,025 (La. App. 2 Cir. 8/25/00), 766 So.2d 723, writ denied, 2000-2680 (La. 11/13/00), 774 So.2d 150.
DISCUSSION
After review of the record, we find that the trial court did not abuse its discretion in awarding Ms. Johnson joint custody with an every-other-weekend visitation plan and designating Mr. Freeman as the domiciliary parent.
In her brief, Ms. Johnson first raises issues of relocation. However, we find these issues to be irrelevant since this was not raised in the trial court. The Bergeron standard, discussed below, is applicable to this case.
The Bergeron standard applies in this case, as the trial court in Natchitoches Parish made a considered decree of joint custody to the parties, with no domiciliary parent being named. Under Bergeron, Mr. Freeman] 9 bears the burden of proving that the continuation of the present custody decree is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron, supra. Not only must he meet the burden of proof set forth in Bergeron, but Mr. Freeman must also show that a change of circumstance materially affecting the welfare of the child has occurred since the prior custody order. Jaligam, supra.
In his oral reasons for judgment, Judge Stephens went through the Article 134 factors and stated his conclusions pertaining to each after hearing the evidence presented. He found: (1) factors one and two were equal between the parties; (2) in light of Ms. Johnson’s new job, the gap for factor three “has narrowed considerably to her credit”; (3) factor four did not apply; (4) factor five weighed in favor of Mr. Freeman; (5) factors six and seven were equal between the parties; (6) factor nine did not apply; (7) factor ten weighed in favor of Mr. Freeman due to Ms. Johnson’s contempt; and (8) the last two factors were “irrelevant.”[1] After going through the factors, Judge Stephens ruled that “by the very slightest of margins... Mr. Freeman needs to have primary custody.”
Factor one—the love, affection, and other emotional ties between each party and the child—is equal between the parties. It is clear that both parties have strong emotional ties with their daughter.
Factor two—the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child—is also equal between the parties. It is clear from the |inrecord that both parties love their daughter immensely and want to provide the best for her. Additionally, both parties testified that they take their daughter to church.
Factor three—the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs—slightly favored Mr. Freeman, but Ms. Johnson’s new job at the school closes the gap, as the trial court noted. Mr. Freeman has been employed at Hertz for six years as an area manager, earning $58,000 per year. Mr. Freeman’s wife is an independent contractor with State Farm Insurance. With their combined incomes, Mr. Freeman testified that *531 they do not have any trouble paying their monthly bills. Additionally, Mr. Freeman has a college fund set up for each of his children so they may attend college. Ms. Johnson, on the other hand, appeared to struggle financially when she first moved to Baton Rouge. She moved apartments a few times due to rent increases, and her check for Addy’s school tuition bounced, leaving Mr. Freeman to foot the bill. However, Ms. Johnson testified that she is currently working as a teacher at Celerity Charter School where she earns roughly $44,000 per year. This new job and salary will allow Ms. Johnson to provide for her daughter. Thus, factor three appears to be roughly equal between the parties.
Factor four—the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment—was found by Judge Stephens not to apply to this case, as both parties have had the child for one week off-and-on for the majority of her life. We agree.
Factor five—the permanence, as a family unit, of the existing, or proposed custodial home or homes—favors Mr. Freeman. Mr. Freeman has L Jived in Rayville for three years. He has been married to his wife, Ms. Woods, for two years, and they share a four-month-old daughter. At trial, Mr. Freeman testified that the home has four bedrooms, and his daughter has her own bedroom with bunk beds. Ms. Johnson, however, has not had the most permanent home base since moving to Baton Rouge. As rent prices have increased, Ms. Johnson has had to move apartments on a few occasions because she has not been able to afford the rent. It is thus clear that Mr. Freeman has had a more established, permanent home.
Factor six—the moral fitness of each party, insofar as it affects the welfare of the child—is equal between the parties. Nothing was found in the record to indicate that either party was not morally fit to take care of their daughter.
Factor seven—the mental and physical health of each party—is also equal between the parties. Nothing in the record indicates otherwise.
Factor eight—the home, school, and community history of the child—is not applicable to this case. It was not mentioned in Judge Stephens’s reasons for judgment likely because their daughter is only four years old. The child has not been in school, and she has lived with each parent one week off-and-on for her entire life. Thus, this factor does not yet seem relevant to this case.
Factor nine—the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference—also does not apply to this case. As stated above, the child is only four years old, which has been found by numerous courts to be an insufficient age for a child to express a preference.
| iaFactor ten—the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party—favors Mr. Freeman. At trial, Mr. Freeman testified that he has always encouraged a relationship between his daughter and Ms. Johnson. He stated that he sends Ms. Johnson pictures from every event and also lets her know of each event in advance so she can attend. He keeps Ms. Johnson involved in all aspects of their daughter’s life. Ms. Johnson, however, was held in contempt by the trial court for not returning the child to Mr. Freeman per their custody agreement. Mr. Freeman did not see his daughter for three months, but continued to pay child support. Additionally, Ms. Johnson enrolled their daughter at a school in Baton Rouge without informing *532 Mr. Freeman. He found out only after Ms. Johnson’s tuition check bounced and the school called him to pay. Although Ms. Johnson argues that she kept the child from Mr. Freeman on the advice of her attorney, this absence could have potentially adversely affected the child’s relationship with her father. This does not show that Ms. Johnson has the ability and willingness to encourage a relationship between the child and Mr. Freeman.
Factor eleven—the distance between the respective residences of the parties—is not applicable. The distance between Rayville and Baton Rouge is roughly three hours. If the child attends school in Rayville, the distance is not so far that Ms.' Johnson would not feasibly be able to see her daughter.
Factor twelve—the responsibility for the care and reaxing of the child pi'eviously exercised by each party—-was found by the trial court to be irrelevant. From the record, it appears that both parties have equally -been responsible for the care and rearing of their daughter.
|,1sAfter review of .the Article 134 factors, it is clear that the trial cQurt did not abuse its discretion in applying -the factors. We agree with Judge Stephens’s application. Thei'efore, it appeal's that Mr. Freeman met his burden of proof under Bergeron. There does not appear to be any harm done to the child by awarding joint custody to Mr. Freeman and Ms. Johnson, with Mr. Freeman as the domiciliary parent. The child will- primarily reside with Mr. Freeman while she attends school in .Ray-ville, and Ms. Johnson will have visitation every other weekend. The chüd, who is only four years old, has not yet established any ties to either Rayville or Baton Rouge, as she has been back and forth between the two her entire life. No major harm will be caused by this change, although she will not see her mother as often.
The advantages of the child’s change of environment clearly substantially outweigh any harm. She will attend school with Ms. Wood’s older daughter, with whom she has a close relationship. She has her own bedroom in a stable home and family environment in Rayville. Mr. Freeman and Ms. Woods have been happily married for two years and are fully capable of providing the best for the child. Addy is currently enrolled in tumbling and cheerleading in Rayville, and all her doctors reside there as well. Living and attending school in Rayville with her father thus appears to be a positive change.
Mr. Freeman has also shown that a material change in circumstance has occurred since the prior custody order. As the trial judge' stated in his reasons for judgment, the “proof is sufficient that I can’t keep doing this a week and a week.” Addy is almost five-years-old and will soon begin attending school. It is not feasible under the current custody order for Addy to attend school for one week in Baton Rouge and one week in Rayville for the duration of the |14school year. It would be difficult for Addy to learn at two different schools, as their currículums may differ. In Shaffer v. Shaffer, 2000-1251 (La. App. 1 Cir. 9/13/00), 808 So.2d 354, writ denied, 2000-2838 (La. 11/13/00), 774 So.2d 151, the First Circuit Court of’Appeal found that the father proved a material change in circumstances materially affecting his daughter’s welfare “by showing that she had reached, school age, that the existing custody/visitation schedule was thereby made unworkable and that her relationship with her brother would be affected.” Because Addy has reached school age and the existing custody order has become unworkable, it is clear that a change in circumstances materially affecting Add/s welfare has occurred. Mr. Freeman made this showing -at trial, and the trial court *533 was not erroneous in modifying the custody order.
Therefore, Mr. Freeman has met his burden of proof, showing by clear and convincing evidence that any harm likely to be caused.by the change in environment is substantially outweighed by its advantages to the child. In addition, it is clear that one week in school in Baton Rouge and one week in school in Rayville is not feasible or good for the child. This material change in circumstance justifies the modification. We thus find that the trial court did not abuse its discretion in making its decision.
CONCLUSION
We find that the trial court did not abuse its discretion in awarding Mr. Freeman and Ms, Johnson joint custody, with Mr. Freeman designated as the domiciliary parent. The child will reside primarily with Mr. Freeman, as she is almost of school age and will attend school in Ray-ville. Ms. Johnson was awarded visitation every other weekend. Based on the record, we believe that Mr..Freeman met his burden of proof under Bergeron. Further, the trial court |1Bdid not err-in finding Ms. Johnson in contempt after she kept Addy from Mr. Freeman for a three-month period. All costs of this proceeding are assessed to the Appellant, Ms. Johnson.
AFFIRMED.
PITMAN, J., dissents with written reasons.

. Judge Stephens did not address the eighth factor.