2016-0249 (La.App. 4 Cir. 12/7/16)

**Vijayendra JALIGAM**

v.

**Radhika POCHAMPALLY**

**NO. 2016–CA–0249**

Court of Appeal of Louisiana, Fourth Circuit.

DECEMBER 7, 2016

Rehearing Denied Jan. 9, 2017

JANE ETTINGER BOOTH, BOOTH & BOOTH, APLC, 138 North Cortez Street, New Orleans, Louisiana 70119, COUNSEL FOR PLAINTIFF/APPELLEE

RICHARD LYNN DUCOTE, 318 East Boston Street, 2nd Floor, Covington, Louisiana 70433, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Chief Judge James F. McKay, III, Judge Edwin A. Lombard, Judge Madeleine M. Landrieu)

JAMES F. McKAY III, CHIEF JUDGE

This appeal involves a highly contested child custody dispute between Radhika Pochampally ("Dr. Pochampally") and Vijay-endra Jaligam ("Dr. Jaligam"). Dr. Pochampally appeals the December 15, 2015 judgment, which modified the previous child custody orders and granted domiciliary status to Dr. Jaligam, beginning at the end of the 2015–2016 school year. Dr. Pochampally also appeals the January 12, 2016 judgment, which granted Dr. Jaligam temporary sole custody and suspended Dr. Pochampally's communication with the children until she undergoes professional therapy and is given written authority by the court. For the reasons set forth below, we affirm both judgments.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Dr. Pochampally and Dr. Jaligam were married in 1997. They have two children: P.J., a fifteen-year-old son, and S.J., a twelve-year-old daughter. The parties were granted a judgment of divorce on August 8, 2008. While residing in New Orleans, the parties operated under a shared custody arrangement.

On July 31, 2012, Dr. Pochampally (the mother) obtained a judgment allowing her to relocate the permanent residence of the children from New Orleans, Louisiana to Jackson, Mississippi.[1] In that ruling, joint custody was granted and Dr. Pochampally was designated as the domiciliary parent. Dr. Jaligam was granted alternating weekends during the school year and all holidays in excess of five days off from school. Dr. Pochampally was granted alternating weekends during the summer when the children resided with Dr. Jaligam. The parties were to alternate responsibility for transporting the children back and forth between Jackson and New Orleans.

On September 30, 2014, a judgment was rendered, modifying the July 31, 2012 relo-

---

1. That ruling was affirmed by this Court in *Jaligam v. Pochampally*, 2012–1510 (La.App. 4 Cir. 4/24/13), 115 So.3d 694, *writ denied*, 2013–1198 (La. 6/12/13), 118 So.3d 1075.

cation judgment, granting Dr. Jaligam additional visitation. It was ordered that Dr. Pochampally would transport the children to and from New Orleans for their visitations. The judgment also specifically provided that "[n]o modification of the Court-ordered physical custody schedule is permitted without express written approval of the Court, which must be sought at least three weeks prior to the proposed change and must include a proposal for make-up physical custody that takes place **before** the proposed change." (emphasis in original).

Following the July 2012 relocation to Mississippi, numerous contempt proceedings were brought against Dr. Pochampally. On December 19, 2012, Dr. Jaligam filed his first rule for contempt alleging that Dr. Pochampally refused to allow his court ordered visitation with the children. On May 17, 2013, Dr. Jaligam filed a second rule for contempt against Dr. Pochampally. On November 20, 2013, the trial court rendered a judgment on Dr. Jaligam's first and second rules for contempt, finding that Dr. Pochampally was in constructive contempt of court for the purposeful and intentional violation of its previous visitation orders and ₃judgments pursuant to La. R.S. 9:346.[2] Dr. Pochampally's motion for a new trial was denied. On February 11, 2015, this Court affirmed the contempt ruling. *Jaligam v. Pochampally,* unpub. 14–724 (La. App. 4 Cir. 2/11/15), 162 So.3d 464. The Louisiana Supreme Court denied Dr. Pochampally's writ application. *Jaligam v. Pochampally,* 15–0533 (La. 6/3/15), 170 So.3d 986.

On October 3, 2014, Dr. Jaligam filed a third rule for contempt (amended on November 19, 2015), alleging Dr. Pochampally's failure to allow his visitation on numerous occasions as ordered by the September 30, 2014 judgment. The motion also sought modification of the custody/visitation decree due to Dr. Pochampally's alleged pattern of willful and intentional violation of La. R.S. 9:346. The matter was heard on December 4, 2015.

Two days prior to the December 4, 2015 hearing, Dr. Pochampally's attorney notified the trial court, via a telephone conference, that Dr. Pochampally wanted the children to testify in court. That request was denied.

In connection with the December 4, 2015 hearing, a judgment was rendered on December 15, 2015, finding Dr. Pochampally in contempt of court. The judgment further ordered that "due to Dr. Pochampally's continuous disregard for the Court's judgments, pursuant to La. R.S. 9:346(H), custody of the children shall be modified. At the end of the 2015–2016 school year, the children shall relocate to New Orleans, Louisiana, to live with Dr. Jaligam, and he shall be designated domiciliary parent." Joint custody, as set forth in the September 30, 2014 judgment, was maintained.

₄Dr. Pochampally filed a motion for new trial asserting that the trial court did not complete a best interest of the child analysis regarding the modification of custody. The motion for new trial was denied, wherein the trial court reiterated her finding that the change of custody ordered in the December 15, 2015 judgment was in the best interest of the children. In denying the motion for new trial, the trial court noted that "[t]he transcript of this hearing is replete with language indicating that the Court's decision to modify the custody was based on the best interest of the children."

---

**2.** La. R.S. 9:346(H) provides: "A pattern of willful and intentional violation of this Section, without good cause, may be grounds for a modification of a custody or visitation decree."

On December 30, 2015, as a result of certain issues that arose during the children's 2015 Christmas visit with their father, Dr. Jaligam filed an *ex parte* rule for emergency temporary sole custody and the temporary suspension of Dr. Pochampally's physical custody. Dr. Jaligam's *ex parte* motion was denied, but the matter was set for hearing on January 8, 2016.

Dr. Pochampally's motion to have the children testify at the January 8, 2016 hearing was denied from the bench. In connection with the January 8, 2016 hearing, the trial court awarded Dr. Jaligam temporary sole custody and ordered Dr. Pochampally to turn the children over to Dr. Jaligam within forty-eight hours. The trial court further ordered that "Dr. Pochampally shall not have any contact or communication with the minor children until she undergoes professional therapy and is given written authority by the Court." A judgment to that effect was signed on January 12, 2016.[3] Dr. Pochampally did not deliver the children as ordered.[4]

Following the January 12, 2016 judgment, Dr. Pochampally filed an emergency writ and stay with this Court. We declined to exercise our supervisory jurisdiction and denied the writ. *Jaligam v. Pochampally*, unpub. 16–108 (La. App. 4 Cir. 2/1/16). Dr. Pochampally's writ application to the Supreme Court was denied. *Jaligam v. Pochampally*, 16–0286 (La. 2/25/16), 184 So.3d 1270. In the Supreme Court ruling, we note that Justice Crichton concurred with the majority and stated:

> The record abundantly evidences Dr. Pochampally's repeated efforts to frustrate Dr. Jaligam's custodial access to his children as well as her ongoing failure to comply with court orders. For this willful and intentional noncompliance, Dr. Pochampally has been held in contempt several times. Dr. Pochampally's belief that the court's orders are incorrect does not permit her to ignore them.

Dr. Pochampally now appeals those portions of the December 15, 2015 and January 12, 2016 judgments that modified custody in favor of Dr. Jaligam and suspended her communication with the children. She has not appealed the contempt rulings.

In this appeal, Dr. Pochampally asserts that the trial court erred in: 1) modifying custody based solely on La. R.S. 9:346(H), rather than considering the children's best interest under La. C.C. Arts. 132–134 and the *Bergeron*[5] criteria; 2) refusing to allow the children to testify; and 3) granting sole custody to Dr. Jaligam and terminating the children's contact with Dr. Pochampally.

## LAW AND ANALYSIS

### Standard of Review

Child custody decisions are reviewed under the abuse of discretion standard. *Leard v. Schenker*, 06–1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357. Thus, "the determination of the trial judge in child custody matters is entitled to great weight and his discretion will not be disturbed on review in the absence of a clear showing of abuse." *Id.* at pp. 3–4, 931 So.2d at 357

---

**3.** The judgment states that the hearing was held on January 11, 2016, rather than January 8, 2016.

**4.** In his brief to this Court, Dr. Jaligam states that Dr. Pochampally did not turn the children over to him until April 19, 2016, after proceedings were filed against her in the Chancery Court of Madison County, Mississippi. Dr. Pochampally does not refute this assertion.

**5.** *Bergeron v. Bergeron*, 492 So.2d 1193 (La. 1986).

(quoting *AEB v. JBE*, 99–2668, p. 7 (La. 11/30/99), 752 So.2d 756, 761).

■■■■■ "Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child." *Mulkey v. Mulkey*, 12–2709, p. 15 (La. 5/7/13), 118 So.3d 357, 367. Furthermore, the court of appeal cannot simply substitute its own findings for that of the trial court. *Id.* at p. 16, 118 So.3d at 368.

### Assignments of Error 1 and 3:

Dr. Pochampally's assignments of error 1 and 3 (argued together in her brief) assert that the trial court erred in modifying the previous custody orders, granting temporary sole custody to Dr. Jaligam, and suspending Dr. Pochampally's contact with the children. Specifically, she maintains that in modifying the custody order, the trial court relied only on an incorrect interpretation of La. R.S. 9:346(H), without applying the best interest requirements and factors for modifying custody, which are set forth in La. C.C. Arts. 131–136 and in *Bergeron, supra*. Dr. Pochampally further asserts that the evidence presented by Dr. Jaligam does not support the trial court's ruling.

We find no merit in the assertion that the trial court relied solely on a finding of contempt pursuant to La. R.S. 9:346(H) in modifying custody. Rather, as we will detail more fully below, it is evident from the record that the trial court considered La. R.S. 9:346(H), but also specifically evaluated this case using the best of the interest of the child requirements and the factors set forth in *Bergeron*. The question here is whether the trial court erred in finding that a modification of custody was warranted under that analysis.

La. C.C. Art. 131 provides that "[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." Article 131 applies in actions to change custody as well as in those to initially set it. La. C.C. Art. 131, comment (d); *Gray v. Gray*, 11–548, p. 19 (La. 7/1/11), 65 So.3d 1247, 1258. La. C.C. Art. 134 sets forth the factors a court is to consider in determining a child's best interest, as follows:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

As noted in the comments, "the factors are simply provided as a guide to the court in making the fundamental finding as to what disposition is in the best interest of the child." La. C.C. Art. 134, comment (a). The comments also make clear that "the list of factors provided in this Article is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court." La. C.C. Art. 134, comment (b).

■ As the Supreme Court set forth in *C.M.J. v. L.M.C.*, 14–1119, p. 17 (La. 10/15/14), 156 So.3d 16, 28–29 (quoting *Turner v. Turner*, 455 So.2d 1374, 1379 (La. 1984)):

The trial judge sits as a sort of fiduciary on behalf of the child, and must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child's emotional, physical, material and social well-being and health which are the judge's very purpose in child custody cases. He must protect the child from the harsh realities of the parents' often bitter, vengeful, and typically highly emotional conflict. The legislature has mandated that the judge shall look only to the child's interests.

■ In *Bergeron*, 492 So.2d at 1200, the Supreme Court established the burden of proof rule in modification cases as follows:

When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

As the Court explained in *Mulkey*, 12–2709, p. 11, 118 So.3d at 365, "when a party seeks to change custody rendered in a considered decree, the proponent of change must not only show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she must also meet the burden of proof set forth in *Bergeron*."

In the present case, the trial court modified the September 30, 2014 considered custody decree in two judgments rendered on December 15, 2015, and January 12, 2016. We will address each judgment separately below, to determine whether the trial court erred in finding that modification was in the best interest of the children as required by La. C.C. Art. 131 and *Bergeron*.

*December 15, 2015 Judgment:*

■ A hearing was held on December 4, 2015, to address (along with other motions not at issue here) Dr. Jaligam's amended third rule for contempt and motion to modify custody due to Dr. Pochampally's alleged pattern of violating the orders of the court.

Dr. Jaligam testified as to numerous occasions, during the time period from August 2013, to November 2015, that he was deprived of his court ordered visitation. In connection with his testimony Dr. Jaligam presented a chart, which he created contemporaneously with the missed visits. He alleged that he missed approximately 206 days of court ordered visitation, including birthdays, holidays and summer vacations.

Dr. Pochampally disputed some of the missed visitation dates alleged by Dr. Jaligam. However, she admitted that she

failed to deliver the children on many of the occasions without seeking a modification as provided by the September 30, 2014 judgment. Her reasons were generally that the children had extracurricular activities or that her sciatica pain prevented her from driving at times when her husband was not available to transport the children to New Orleans. On some occasions she stated that she did not bring the children because Dr. Jaligam did not reimburse her for mileage. She also stated that if one child had a conflict with a scheduled visitation, she would not bring the other child because "they don't want to separate at all." She further explained that on those occasions when she did not bring the children, she would email Dr. Jaligam or have one of the children contact him. Dr. Pochampally acknowledged that she was aware of the provision in the September 30, 2014 judgment requiring the court's approval to modify the visitation schedule to accommodate the extracurricular activities. However, she stated that she never sought the court's permission to deviate from the judgment.

The trial court ruled from the bench, finding Dr. Pochampally in contempt of court for her "pattern of willful and intentional violations." In conjunction with the December 4, 2015 hearing, a judgment with reasons was rendered on December 15, 2015. The judgment decreed that "due to Dr. Pochampally's continuous disregard for the Court's judgments, pursuant to La. R.S. 9:346(H), custody of the children shall be modified. At the end of the 2015–2016 school year, the children shall relocate to New Orleans, Louisiana, to live with Dr. Jaligam, and he shall be designated domiciliary parent." The judgment further modified the visitation schedule, giving Dr. Pochampally the children for the entire summer and setting the details of the weekend and holiday visitations.

Considering the overwhelming evidence of contempt on the part of Dr. Pochampally, we conclude that the trial court did not err in modifying the domiciliary status and physical custody schedule pursuant to the provisions of La. R.S. 9:346(H). As previously noted, the December 15, 2015 judgment did not alter the joint custody ruling from the September 30, 2014 judgment. Rather, it modified the domiciliary status and the physical custody arrangement. Under the circumstances, we find this modification to be warranted pursuant to La. R.S. 9:346(H).

■ We further conclude, based on the record before us, that the trial court did not rule in a vacuum based solely on La. R.S. 9:346(H). To the contrary, the record clearly demonstrates that the trial court considered the best interest of the children in making her ruling with regard to the December 15, 2015 judgment.

In modifying the domiciliary status and physical custody, the court determined that it was in the children's best interest to develop a relationship with their father, which was not being facilitated by Dr. Pochampally. Providing reasons from the bench, the trial court stated:

But let me just be clear. The kids, if they are in your custody—and I understand the kids have wants—but both parents ought to be a part of a child or children's lives, unless a parent is showing total disregard or unless the parent or parents are a detriment to the children.

So that's great that they want to be involved in extracurricular activities. They should because they should be well-rounded. But there should be communication. And when there is a schedule that is put in place for the visitation of the noncustodial parent, that needs to be taken into consideration as it relates to the other parent, because there are

kids that have wants, and then there are needs. And although the kids may want to do certain things, the priority is what is in their best interest, and I believe it's in their best interest to have both parents in their lives. I believe it's in their best interest to be a part of a well-rounded school and extracurricular activities, but not to the detriment of a parent. That is my judgment.

It is also apparent from the ruling that the trial court considered the best interest of the children in allowing them to stay in school in Mississippi until the end of the 2015–2016 school year, thereby lessening the disruption.

In sum, we find that the trial court made every effort to assess the best interest of the children, and the record supports that finding. Thus, we cannot say that the trial court abused her discretion in rendering the December 15, 2015 judgment, which granted Dr. Jaligam domiciliary status and modified the physical custody arrangement.

### January 12, 2016 Judgment:

On December 30, 2015, Dr. Jaligam filed a rule for emergency sole custody and temporary suspension of Dr. Pochampally's visitation. The motion alleges that Dr. Pochampally again failed to follow the court ordered visitation schedule. It further alleges that Dr. Pochampally and her husband (Regi Kunnel) interfered with Dr. Jaligam's visitation while the children were with him over the Christmas break, and that Dr. Pochampally instructed the children to violate the court's orders.

The matter was heard on January 8, 2016. The trial court heard testimony from Dr. Jaligam, Dr. Pochampally, and Dr. Kristen Luscher, who was called by Dr. Pochampally. In a ruling from the bench, Dr. Jaligam was granted temporary sole custody, to begin within forty-eight hours on January 10, 2016. Dr. Pochampally's visitation with the children was suspended until she received professional therapy and was given written authority by the court. A judgment to that effect was signed on January 12, 2016.

Dr. Jaligam testified that following the December 4, 2015 hearing on his third motion for contempt, he was scheduled to have the children on the weekend of December 11 through December 13, but that the children were not brought to him. After that weekend, the children were scheduled to arrive for Christmas break on December 18, 2015. They did not arrive until December 21, 2015. Dr. Jaligam introduced a text message that he received from P.J. on December 19, 2015, which included a picture of P.J. with Mr. Kunnel. The text stated, "Having a great time with my father."

Dr. Jaligam testified that when the children first arrived, they looked very stressed. He stated that they did not want to talk to anyone although they interacted a little with their step-siblings. He further stated that they acted disrespectful toward him, and mostly stayed in their rooms, constantly on their cell phones. Dr. Jaligam introduced photographs of the children on the first three days of the visit, not smiling and looking very unhappy.

Dr. Jaligam explained that on the second day he took away the children's phones but explained to them that they could speak with their mother from 7:00 p.m. to 8:00 p.m. (the only time frame specified in the court's prior judgment). Dr. Jaligam received an email and text from Mr. Kunnel, stating: "Please return my phones to [the children] Immediately! If not I will file a complaint against you with the NOPD!!"

On December 23, 2015, the police arrived at Dr. Jaligam's home. He stated that he showed the officers the custody

judgment and they left. Dr. Jaligam stated that no one in the home called the police. He assumed the call came from Mr. Kunnel.

Dr. Jaligam testified that on the morning of December 24, 2015, he came upon his stepson's open laptop (which he shared with P.J.). On the laptop were emails between P.J. and his mother from 8:02 p. m. to 11:25 p.m. on the night of December 23, 2015, wherein P.J. stated that he was unhappy and fearful of his dad. One of the emails stated specifically that "he knows we want to run away." The laptop also revealed a document presumably written by P.J. titled "The Plan." In that document, P.J. described his anger and his hatred toward his father and stated his plan to fight with his father every second during the Christmas break.[6]

On the evening of December 24, 2015, Dr. Jaligam stated that he was alarmed to discover P.J. on the upstairs balcony, standing on the outside of the railing. S.J. was standing just behind him. Dr. Jaligam feared P.J. would fall or even kill himself. He stated that at the time he believed the children were trying to run away. Dr. Jaligam introduced a photo he took of the children on the balcony. He explained that it was taken just a few minutes after the children received an eight second call on the home telephone from Mr. Kunnel.

On the morning of December 25, 2015, the police arrived at the home a second time, apparently in response to a call from P.J. After speaking with P.J., they left. Dr. Jaligam stated that P.J. seemed to calm down after that incident.

Dr. Jaligam stated that after his sister and her children arrived for a visit, the children relaxed, started to enjoy themselves, and even tried to reconnect with him. They played games and watched movies with the family and accompanied Dr. Jaligam on outings. On P.J.'s suggestion, father and son attended a Saints game together. Dr. Jaligam introduced photographs and videos of the children during this time period, seemingly happy and interacting with the family.

As Dr. Jaligam and P.J. were preparing to leave for the Saints game, a lady from child protection services came to the home to investigate alleged claims that Dr. Jaligam beat his son, that the children's phones had been taken away, and that the children did not wish to stay in the home. She left after speaking with Dr. Jaligam and the children.

On January 4, 2016, Dr. Pochampally and Mr. Kunnel picked up the children at the designated location. Shortly thereafter, the police came to Dr. Jaligam's home, for a third time, to inquire about Mr. Kunnel's two cell phones that were not returned to the children. Dr. Jaligam showed the officers the court judgments and explained that he was keeping the cell phones as evidence.

Dr. Pochampally testified at the January 8, 2016 hearing that she did not bring the children for the December 11, 2015 weekend visitation because "P.J. was having midterm exams and a lot of things were going on." She explained that the kids communicated to their father that they could not be coming that weekend.

Regarding the Christmas visitation, which was to begin on December 18, 2015, Dr. Pochampally admitted that she did not bring the children until December 21, 2015. She stated that was for two reasons. First, she thought it was her weekend[7],

---

**6.** A printout of the emails and "The Plan" were introduced into evidence.

**7.** All prior judgments state that holidays trump the weekend visitation schedule. Dr.

and second, she wanted to bring the children to a therapist, Dr. Luscher, and could not get an appointment with her until December 21, 2015.

Dr. Pochampally testified that she brought the children to Dr. Luscher (a therapist in Louisiana that the children had never seen before) so that she could have someone present when she informed the children that the December 15, 2015 judgment ordered them to relocate to New Orleans at the end of the 2015–2016 school year. She stated that she brought them to Dr. Luscher on the way to New Orleans for the Christmas visit because she thought they should know about the change in advance. She stated that she did not take the children to their regular therapists in Jackson to be told the news. Dr. Pochampally explained that she wanted to use a therapist in Louisiana just in case the children needed further help with the transition. Dr. Pochampally denied that she chose a therapist in Louisiana in order to have a witness testify at trial. Dr. Pochampally acknowledged that under the prior joint custody order she was required to inform Dr. Jaligam that she was taking the children to a therapist, but she failed to do so.

Dr. Pochampally first testified that she did not call the police to go to Dr. Jaligam's home during the Christmas visit, and that she did not know whether her husband had made the call. On cross-examination, however, Dr. Pochampally admitted that her husband did call the police to complain about the children's phones being taken away. She further acknowledged that she instructed P.J. to call the police if he had any problems during the visit.

In her testimony, Dr. Pochampally initially stated that she did not find out about

the children wanting to run away until much later. However, on cross-examination, she admitted that the email exchange with P.J. on December 23, 2015 mentioned the subject of running away. She stated that she was not sure if it was really P.J. sending the emails.

Dr. Luscher testified that she interviewed the children on December 21, 2015, at Dr. Pochampally's request. The purpose of the visit was to help facilitate Dr. Pochampally telling the children about the upcoming custody change. She stated that when Dr. Pochampally told the children that the court had ordered them to relocate to New Orleans after the end of the school year, they were visibly shocked and distressed. She thought their reaction appeared genuine. Dr. Luscher stated that it would have been better for Dr. Jaligam to be present when the children were told of the custody change.

Following the testimony, the trial judge presented her findings from the bench as follows:

> You know, there's been a lot of talk about *Bergeron* and the *Bergeron* factors. In order for me to modify a custody dispute that has previously been a considered decree, the person seeking the modification bears a heavy burden of proving that the current custody is so deleterious to the child as to warrant its modification, or by clear and convincing evidence that the benefits of the change outweigh the damages that will be done to the child.

> \*\*\*

> Looking at all of the factors, what is at the crux of my decision, not only in this case, but in every case that I consider that involves a child or children, I am paramountly looking at what is in their best interest.

Pochampally thought that aspect of the judg-

ment was up for interpretation.

\*\*\*

Looking at the volumes of this record, looking at the multiple judgments, looking at the testimony and the evidence that has been submitted, not only today, but thinking about everything that has happened, the children are suffering, and I do believe that Dr. Pochampally is not taking any responsibility for what she is doing and how she is causing the breakdown and the deterioration of the relationship. I think this is a classic case of parental alienation. I think temporary sole custody is warranted because, if this continues with these children under the umbrella and sole influence of Dr. Pochampally, these children will be forever scarred. This is so unfortunate this has happened.

\*\*\*

The children, I believe, have been repeatedly traumatized. They have been repeatedly contaminated by undue influence. And they are children. They are minors. When I look at the best interest, these children are fragile. Therapy needs to commence immediately with these children. Dr. Pochampally needs to undergo therapy by a professional before she is to have any access to these children.

The trial court also found that Dr. Pochampally's testimony lacked credibility.

As with the December 15, 2015 judgment, Dr. Pochampally asserts that the modification of custody in the January 12, 2016 judgment is strictly punitive. She argues that there is no evidence that a change in custody is in the best interest of the children, pointing out that the children were doing outstandingly in Mississippi and that no expert testified as to the children's best interest. Dr. Pochampally also submits that there is no evidence that she caused the children's' negative relationship with their father.

It is well settled that "[t]he trial court is in the best position to ascertain the best interest of the child and any findings made in furtherance of that best interest should not be disturbed on appeal absent a clear showing of abuse of discretion. *C.M.J.*, 14–1119, pp. 24–25, 156 So.3d at 33 (citing *Thompson v. Thompson*, 532 So.2d 101 (La. 1988)).

Based on our review of the record, there is no indication that the trial court's ruling was based solely on Dr. Pochampally's contempt pursuant to La. R.S. 9:346(H). To the contrary, it is evident that the court's primary focus was the best interest of the children. Moreover, we find that the record supports the trial court's findings. Not only has Dr. Pochampally demonstrated an unwillingness to facilitate a relationship between the children and their father, she has repeatedly thwarted Dr. Jaligam's efforts to see his children and spend any significant time with them. When Dr. Pochampally was the domiciliary parent, it is clear that the children were being prevented from developing a meaningful relationship with their father. The trial court correctly recognized that it is the children's best interest to have both parents in their lives.

We also note that the less drastic remedies previously imposed by the trial court, i.e., contempt rulings and imposition of fines, have been fruitless, as Dr. Pochampally has repeatedly ignored the directives of the court.[8] Consequently, for the reasons stated herein, we find no error in the trial court's decision to modify custody and

---

8. Dr. Jaligam argued before this Court that Dr. Pochampally has never paid the court ordered fines and attorney's fees. While this information is not in the record before us, we note that Dr. Pochamapally has not refuted this assertion.

suspend Dr. Pochampally's visitation pending further orders of the court.

### Assignment of Error No. 2:

■ Dr. Pochampally asserts that the trial court erred in refusing to allow the children to testify at the hearings on December 4, 2015, and January 8, 2016. On December 2, 2015, Dr. Pochampally's attorney made an oral request that the children be allowed to testify at the December 4, 2015 hearing. That request was denied.

In connection with the denial of Dr. Pochampally's oral request to have the children testify at the December 4, 2015 hearing, the court stated in open court:

Dr. Pochampally wanted to call the children as witnesses to substantiate her contempt allegations. In accordance with local rules of the Court, the Court did not allow the children to be called to testify. Appendix 24.12 of the Rules for Louisiana District Courts addresses the Court–Specific Rules Concerning the Presence of Children in the Courtroom and/or Hearing Officer Conferences. Appendix 24.12 for the Orleans Parish Civil District Court states,

Litigants and witnesses shall not bring children to Court without prior Court approval. Children are not allowed in the courtroom without special permission of the Judge. When the Court has given approval for a child to offer testimony or be interviewed by the Judge in chambers, the child shall be made available on a standby basis at a location other than the courthouse, until called by the Court.

Dr. Pochampally failed to provide the Court with adequate notice of her intentions to have the children testify in these proceedings. On the afternoon of Wednesday, December 2, 2015, the court initiated a telephone conference with counsel for both parties. It was during this telephone conference that Dr. Pochampally's attorney notified the Court and opposing counsel that Dr. Pochampally planned on calling the children as witnesses. This telephone conference was the first time the Court was given any notice that Dr. Pochampally wanted the children to testify, and if the Court had not initiated the telephone conference, the Court would not have had any notice of Dr. Pochampally's intention to call the children to testify. *Additionally, considering the fact that the children have already testified in previous hearings and have even witnessed Dr. Jaligam being arrested in open court, the Court was not willing to subject the children to another courtroom experience.* (Emphasis added).

The record also reflects that near the conclusion of the December 4, 2015 hearing, the trial court denied Dr. Pochampally's renewed motion to allow the children to testify. In reiterating her ruling, the court stated: "So I appreciate you re-urging your request to bring the children, but I will not allow it because I don't believe it's in their best interest to put them squarely in the middle of this litigation any more than they have been put in the middle."

On January 5, 2016, Dr. Pochampally filed a written motion to allow the children to testify at the January 8, 2016 hearing, which Dr. Jaligam opposed. The trial court signed an order reserving her right to allow the children to testify, pending the evidence presented. At that hearing, the trial court determined that the children were too alienated to give useful testimony. Specifically, the trial court stated: "I am not allowing these kids to testify. I believe it's going to further traumatize these children, who have clearly been adversely affected by the influence of their mother."

■ It is well established that "[t]he trial court has broad discretion in deciding whether to allow the testimony of a child." *Wilson v. Wilson*, 15–074 (La.App. 5 Cir. 4/29/15), 170 So.3d 340, 347 (quoting *Bowden v. Brown*, 48,268, p. 18 (La.App. 2 Cir. 5/15/13), 114 So.3d 1194, 1205).

Here, the record reveals that the trial court was thoroughly familiar with the protracted history of this case, including the children's involvement at previous hearings. In ruling that the children would not testify, the trial court's concern for the children's best interest was clearly expressed. Thus, we find no abuse of discretion in the trial court's ruling. This assignment of error lacks merit.

### DECREE

For the foregoing reasons, we find no abuse of discretion by the trial court in modifying custody in favor of Dr. Jaligam, suspending Dr. Pochampally's contact with the children, and in ruling that the children would not testify. Accordingly, we affirm the judgments rendered on December 15, 2015, and January 12, 2016.

**AFFIRMED.**