ANTHONY JAMES WILLIAMSON

VERSUS

NADIA NICOLE BELL

NO. 24-CA-6

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 734-687, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

May 22, 2024

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Timothy S. Marcel

**<u>AFFIRMED</u>**
 **SMC**
 **JGG**
 **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ANTHONY WILLIAMSON
Tilton R. Hunter, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
NADIA BELL
Renee L. Swanson

**CHEHARDY, C.J.**

In this child custody case, the father appeals the trial court's July 5, 2023 judgment that, among other things, held it was in the best interest of the two minor children that their mother be granted sole custody, and that the father be granted visitation every other Saturday and Sunday. For the following reasons, we affirm.

**FACTUAL BACKGROUND**

Anthony James Williamson and Nadia Nicole Bell have never been married, but began an intimate relationship when Mr. Williamson was 18 years old and Ms. Bell was 15 years old. As a result of their intimate relationship, two children were born: A.J.B. on July 13, 2011; and A.B. on May 13, 2013.[1] Ms. Bell gave birth to A.J.B. one month after her seventeenth birthday, and gave birth to A.B. when she was eighteen. The parties terminated their relationship prior to the birth of A.B., when Ms. Bell discovered that Mr. Williamson was expecting a child with another woman.

In 2014, Mr. Williamson filed a petition to establish joint custody. On April 24, 2014, the parties entered into a consent judgment, wherein they were awarded joint custody of the boys, with Ms. Bell designated as the domiciliary parent. Pursuant to the judgment, Mr. Williamson's visitation was initially limited to supervised visitation a couple hours a week, with a graduated schedule that ended nine months later. By December 2014, Mr. Williamson had physical custody of the boys every other weekend and one night per week.

On November 25, 2019, Mr. Williamson filed a rule to modify custody, alleging that the boys were no longer residing with Ms. Bell, but were living with her father, Douglas Bell, and paternal aunt, Crystal Bell. A hearing on Mr. Williamson's rule to modify custody was first heard on September 2, 2020, by

---

[1] The initials of the children of the parties will be used to protect and maintain the privacy of the minor children involved in this proceeding. Uniform Rules, Courts of Appeal, Rule 5–1 and 5–2.

hearing officer Lisa Matthews. At that time, the parties were ordered to undergo a custody evaluation by Shewayn Watson. Pending the outcome of the evaluation, Ms. Bell was ordered to remain the domiciliary parent, with Mr. Williamson exercising visitation every other weekend.

Ms. Watson completed her custody evaluation report on January 18, 2021, recommending that Mr. Williamson be designated as the domiciliary parent, for the boys to attend school in St. Tammany Parish, and that Ms. Bell exercise visitation every other weekend. The parties returned to court before the hearing officer on March 10, 2021, at which time hearing officer Lisa Matthews considered "modifications in custody and physical custody/visitation" of the minor children. The record reflects that the hearing officer considered the custody evaluation report of Ms. Watson and found that her recommendations should be adopted. An interim order adopting those findings was signed on March 17, 2021, and an interim judgment was signed by the trial court on April 13, 2021. The parties were awarded joint custody of the boys, and "effective immediately," Mr. Williamson was designated as the domiciliary parent, with a visitation schedule of the boys gradually preparing them to move to the Northshore and attend school there. The parties were ordered, among other things, to subscribe to Our Family Wizard for future communications and to complete a 16-hour "Cooperative Parenting & Divorce" course. Further, the children were ordered to participate in counseling to assist them in transitioning from being primarily cared for by Ms. Bell and her family to moving to the Northshore to be primarily cared for by Mr. Williamson. Ms. Bell was ordered to undergo an updated mental health assessment. Ms. Bell timely filed objections to the hearing officer's recommendations and to the interim judgment.

On May 5, 2021, Ms. Bell filed a motion for a *Watermeier* hearing requesting that the trial judge meet with the boys, then ages 10 and 8, to discuss

with them in chambers regarding pertinent facts relevant to custody, including the reasonable preference of each child pursuant to La. C.C. art. 134, since Ms. Watson did not consider the preference of the boys in her evaluation and subsequent report. Mr. Williamson objected. After a hearing on June 2, 2021, the trial court granted Ms. Bell's motion for a *Watermeier* hearing and gave the parties the opportunity to submit questions for the court to ask the boys.

Prior to a hearing on Ms. Bell's objections to the hearing officer's recommendations and to the interim judgment, the parties entered into a consent judgment on July 8, 2021, in lieu of adopting the custody evaluator's recommendations. In the consent judgment, the parties agreed that, on an interim basis and without prejudice to either party, the parties would share joint custody of the boys, with Ms. Bell being designated as the domiciliary parent, except that Mr. Williamson would preside over medical issues. The parties further agreed that, on an interim basis, they would exercise a 7 days on/7 days off shared physical custody schedule, and that the boys would continue attendance at Audubon Elementary in Kenner. The consent judgment further provided that any and all orders in the March 10, 2021 interim judgment (signed by the trial court on April 13, 2021), not in conflict with the consent judgment, were to remain in full force and effect.

On November 30, 2021, Mr. Williamson filed a rule for contempt, alleging that Ms. Bell had violated the July 8, 2021 consent judgment by refusing to allow him to pick up the boys for his scheduled week of physical custody. At the time, Hurricane Ida was approaching and, without Mr. Williamson's consent, Ms. Bell wanted the boys to evacuate with her to Houston despite it being Mr. Williamson's week to have physical custody of the boys. Mr. Williamson also alleged that Ms. Bell violated the earlier March 17, 2021 interim order by failing to complete the parenting course. The matter came before hearing officer, Lisa Matthews, on

February 9, 2022, and Mr. Williamson's rule for contempt was granted. The parties agreed as to how evacuation planning should be handled in the future. The hearing officer further found that Ms. Bell should have completed the parenting course she was previously ordered to take, as the course is offered online and Ms. Bell could have attended those classes from home. Ms. Bell was again ordered to take the parenting class, and Mr. Williamson was ordered to re-attend the class so that the parties could take the class together. An interim judgment was signed on February 10, 2022. On February 15, 2022, Ms. Bell timely filed objections to the interim judgment.

On March 30, 2022, a pivotal incident occurred, in which ten-year old A.J.B. had an outburst at school, telling his teacher that he "wanted to die." The school's mental health professional advised that during her assessment of A.J.B., he reported that he had previously attempted suicide one month prior and that he would attempt suicide again if he had to return to his father's home. The school reported the incident, as well as "physical abuse at dad's house," to the Department of Children and Family Services. A.J.B. was brought to Children's Hospital and admitted for a psychological assessment. A.J.B. was ultimately discharged home with instructions that he was to "stay in his mother's home until all is cleared due to child's safety and risk of suicide."

As a result of the March 30, 2022 incident involving A.J.B., on April 6, 2022, Ms. Bell filed a petition for sole custody and La. C.C.P. art. 3945 relief, to suspend physical custody, and for an *ex parte* order pending a rule to show cause. In addition to A.J.B.'s reported suicide attempt and his threat to commit suicide if made to go to his father's house, Ms. Bell alleged that Mr. Williamson was spanking the boys to the point of bruising, walking around his home naked, and allowing the minor children into his bedroom while Mr. Williamson and his wife were unclothed. Ms. Bell's petition also alleged that Mr. Williamson was

instructing the boys to "stop telling people what goes on in his house, including but not limited to the children's therapist, Dr. Marvin Clifford." On April 7, 2022, an *ex parte* order was signed and issued pursuant to La. C.C.P. art. 3945, granting Ms. Bell temporary sole custody of A.J.B. and A.B. and suspending Mr. Williamson's physical custody of the boys, pending a hearing on Ms. Bell's petition for sole custody.

In response to Ms. Bell's petition for sole custody and Article 3945 relief, Mr. Williamson filed a second rule for contempt and motion to modify custody on May 2, 2022, alleging that Ms. Bell had again violated the July 8, 2021 consent judgment by failing to take the parenting course, for refusing to allow him to exercise his physical custody of the boys from March 30-31, 2022, April 8-14, 2022, and April 22-28, 2022, and for her "attempt to alienate the children" from him. Mr. Williamson further alleged that it was in the boys' best interest to rescind the July 8, 2021 consent judgment and to reinstate the March 10, 2021 interim judgment (signed by the district court on April 13, 2021), wherein he was named the domiciliary parent and Ms. Bell was granted visitation with the boys every other weekend.

Commissioner Ruben Bailey conducted a three-day trial on Ms. Bell's petition for sole custody pursuant to La. C.C.P. art. 3945 and to suspend Mr. Williamson's physical custody of the boys. The trial commenced on May 17, 2022, continued on May 31, 2022, and concluded on June 10, 2022, at which time Commissioner Bailey modified the parties' 7 days on/7 days off physical custody schedule as previously set forth in the July 8, 2021 consent judgment.[2] Specifically, Commissioner Bailey ordered that A.J.B. was to remain in the

---

[2] Counsel for both parties submitted judgments for signature, and Commissioner Bailey mistakenly signed both on the same day. After reviewing the transcript, the trial judge struck the June 21, 2022 judgment filed by Mr. Williamson's counsel, finding that the judgment submitted by Ms. Bell's counsel on June 16, 2022, more accurately reflected the commissioner's ruling.

physical custody of Ms. Bell and ordered a temporary visitation schedule for A.J.B. with Mr. Williamson, pending completion of a mental health evaluation by Dr. Kristin Luscher regarding A.J.B.'s suicidal ideation. Commissioner Bailey further ordered that Mr. Williamson was to resume physical custody of A.B. pursuant to the schedule set forth in the July 8, 2021 consent judgment. Ms. Bell timely filed objections to the commissioner's ruling insofar as it permitted Mr. Williamson to resume physical custody of A.B. in accordance with the parties' July 8, 2021 consent judgment.[3]

Mr. Williamson's previously filed rule for contempt and to modify custody came for hearing before hearing officer Lisa Matthews on August 8, 2022. At that time, the parties entered into a consent judgment wherein Dr. Karen van Buyer was appointed to conduct a custody evaluation, to include designation of a domiciliary parent and school placement for the boys.[4] The consent judgment also ordered the parties and the children to attend family re-unification therapy with Martha Bujanda. Mr. Williamson's rule for contempt and to modify custody was reserved and continued to be reset pending the custody evaluation.

On September 8, 2022, a pre-trial conference with the trial court judge was held. At that time, the trial judge ordered that A.J.B. and A.B. continue the visitation schedule with Mr. Williamson in accordance with Commissioner Bailey's June 10, 2022 interim judgment, and advised that she would not disturb the commissioner's ruling without first holding an evidentiary hearing.

On June 22, June 23, and June 28, 2023, the trial court conducted a *de novo* hearing on the following: (1) Ms. Bell's April 6, 2022 petition for sole custody, to

---

[3]    In *Garcia v. Hernandez*, 21-338 (La. App. 5 Cir. 4/11/22), 339 So.3d 61, this Court held that "it is clear that if either party files an objection, the 'interim order' of the domestic commissioners remains interim until the district court renders its judgment."

[4]    Hearing Officer Matthews determined that, because Ms. Shewayn Watson, who had rendered the prior January 18, 2021 custody evaluation report, "recently retired … an updated evaluation [was] needed."

suspend physical custody, and for an *ex parte* order pending rule to show cause, (2) Ms. Bell's objection to Commissioner Bailey's June 10, 2022 interim judgment, returning A.B. to the July 8, 2021 consent judgment schedule, (3) Mr. Williamson's May 2, 2022 rule for contempt and to modify custody, and (4) Mr. Williamson's motion to declare all orders and judgments stemming from Ms. Bell's petition for sole custody and La. C.C.P. art. 3945 relief to be null and void. Thus, before the trial court were the parties' competing actions to modify custody. The trial court took the matter under advisement.

On July 5, 2023, the trial court issued judgment, with extensive written reasons: (1) granting Ms. Bell sole custody of A.J.B. and A.B., (2) granting Ms. Bell's objection to Commissioner Bailey's interim order, (3) denying Mr. Williamson's motion to modify custody and rule for contempt, (4) denying Mr. Williamson's motion to declare all orders and judgments stemming from Bell's petition for sole custody null and void, and (5) limiting Mr. Williamson's visitation with A.J.B. and A.B. to every other Saturday and Sunday from 12:00 p.m. to 6:00 p.m.

Upon *de novo* review, the trial court found that Dr. van Beyer's custody evaluation was based on a faulty premise. Specifically, the trial court found that when conducting her custody evaluation, Dr. van Beyer was not provided a copy of Ms. Bell's petition for sole custody and La. C.C.P. art. 3945 relief, nor a copy of Commissioner Bailey's June 21, 2022 interim judgment following the three-day hearing on Ms. Bell's petition. Further, the trial court noted that Dr. van Beyer's opinion, as stated in her report, that "the issues in the present updated evaluation remain the same as in the evaluation conducted by Ms. Watson," was erroneous, because the parties entered into the July 8, 2021 consent judgment in lieu of adopting Ms. Watson's recommendations (*i.e.* that the parties have joint custody, with Mr. Williamson designated as the domiciliary parent and the boys attending

school in St. Tammany Parish), and because Ms. Watson had never testified in this matter. Moreover, the trial court found that several things had changed since Ms. Watson conducted her custody evaluation, most notably, the circumstances of A.J.B.'s threat of suicide, which prompted Ms. Bell to file the petition for sole custody and La. C.C.P. art. 3945 relief, and the fact that the parties have been sharing equal custody of the boys. Consequently, the trial court determined that, because Dr. van Beyer's report was based on a faulty premise, her conclusions and recommendations were of limited use in determining custody of the minor children.

Mr. Williamson's timely appeal followed.

**ASSSIGNMENTS OF ERROR**

On appeal, Mr. Williamson contends the trial court committed legal error: (1) by ruling that Commissioner Bailey's June 10, 2022 interim judgment modified the July 8, 2021 consent judgment: (2) by modifying the July 8, 2021 consent judgment in chambers during a status conference, without first conducting a contradictory hearing; (3) by deciding Ms. Bell's objection to the commissioner's ruling without considering the record and evidence from the proceedings conducted by Commissioner Bailey; and (4) by ruling that the *Bergeron* standard applied to Mr. Williamson's motion to modify custody of a stipulated custody decree.

**STANDARD OF REVIEW**

In most child custody cases, the trial court's rulings are based heavily on its factual findings. *Wilson v. Wilson*, 15-74 (La. App. 5 Cir. 4/29/15), 170 So.3d 340, 344. The trial judge is in the best position to ascertain the best interest of the child based on the particular circumstances in each individual case, and therefore, the trial court's custody determination is entitled to great weight. *Id.* Appellate courts

will not disturb a trial court's custody award absent manifest error or abuse of discretion. *Id.*

It is well-established that each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount goal of reaching a decision that is in the best interest of the children. *McFall v. Armstrong*, 10-1041 (La. App. 5 Cir. 9/13/11), 75 So.3d 30, 38. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Main v. Main*, 19-503 (La. App. 5 Cir. 2/19/20), 292 So.3d 135, 142, *writ denied*, 20-545 (La. 6/12/20), 307 So.3d 1036, *reconsideration not considered*, 20-545 (La. 7/2/20), 298 So.3d 180. An appellate court may not reverse reasonable findings merely because it would have weighed the evidence differently, but an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Silbernagel v. Silbernagel*, 06-879 (La. App. 5 Cir. 4/11/07), 958 So.2d 13, 17; *see also Salvant v. State*, 05-2126 (La. 7/6/06), 935 So.2d 646, 658.

Where one or more trial court legal errors interdict the fact-finding process, however, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742, *rev'd in part*, *on other grounds*, 96-3028 (La. 7/1/97), 696 So.2d 569, *reh'g denied*, 96-3028 (La. 9/19/97), 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731, 735. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Id.* When such a

prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*. *Id.*

## DISCUSSION

In the instant case, Mr. Williamson argues the trial court made a series of legal errors, which materially affected the outcome of this case and has deprived him of substantial rights. We disagree.

### 1. *Ms. Bell's Petition for Sole Custody*

In his first assignment of error, Mr. Williamson avers the trial judge legally erred when she determined that Ms. Bell's petition for sole custody, which also sought emergency relief pursuant to La. C.C.P. art. 3945, was a motion to modify custody. At the time Ms. Bell filed her petition on April 6, 2022, entitled "Petition for Sole Custody, to Suspend Physical Custody, and for *Ex Parte* Order Pending Rule to Show Cause," the parties were operating under the July 8, 2021 consent judgment, which granted the parties joint physical custody of the boys on a 7 days on/7 days off schedule. In her petition for sole custody, Ms. Bell also sought emergency relief because of A.J.B.'s threat to kill himself if forced to return to his father's home. Recognizing that irreparable harm could result pending a hearing on the merits of Ms. Bell's request for sole custody, the court granted a temporary *ex parte* order suspending Mr. Williamson's physical custody.

Relying on Commissioner Bailey's statement made during the hearing on Ms. Bell's petition that, "I believe … that this is not a petition to modify custody, this is a petition for temporary sole custody under the emergency provisions of [La. C.C.P. art. 3945]," Mr. Williamson contends that Ms. Bell never filed a motion to modify custody in conjunction with her request for emergency temporary custody. To the contrary, after considering the prayer of Ms. Bell's petition and the

provisions of La. C.C.P. art. 3945(D), the trial judge determined that Ms. Bell's petition, which included a request for an *ex parte* order of temporary custody of the boys, was also an action requesting the court to modify the custody arrangement set forth in the parties' prior July 8, 2021 consent judgment by granting Ms. Bell sole custody of A.J.B. and A.B.  The prayer of Ms. Bell's petition stated:

> Based upon the above facts and circumstances, mover, Nadia Bell, has serious concerns about the children's health, welfare, and safety if she is not granted sole custody of the minor children and if the defendant-in-rule continues to have physical custody of the minor children, and Petitioner-in-Rule further avers that it is in the best interests of the minor children for her to be awarded sole custody of the minor children and for Anthony Williamson's physical custody of the children to be suspended immediately.

La. C.C.P. art. 3945(D) provides that the rule to show cause why the respondent should not be awarded custody shall be assigned for hearing not more than thirty days after signing of the *ex parte* order of temporary custody.  The trial judge determined that the express language of the Article contemplates a request for a modification of custody in addition to the request for an order of emergency temporary custody pending the hearing on a request for modification.  Specifically, the trial judge stated that "the ex parte order of temporary custody is one part of 3945 ... .  The other part is that if filed in conjunction with a request under 3945[, it] is always a request changing custody because of whatever the exigent circumstances are, that naturally follows.  And so I'm gonna [sic] disagree with what [the commissioner] said on the record[.]  I think it's wrong."  We agree.  Simply because Ms. Bell's petition for sole custody contained an additional request for emergency relief pursuant to La. C.C.P. art. 3945 does not alter the fact that her action was for a modification of the 7 days on/7 days off custody arrangement to a sole custody arrangement.

Mr. Williamson also argues the trial court legally erred in determining that Commissioner Bailey's June 10, 2022 interim judgment (signed on June 16, 2022) was a considered decree. The record shows that Ms. Bell's petition was heard by Commissioner Bailey over the course of three days, and on June 10, 2022, he rendered a judgment modifying the parties' July 8, 2021 consent judgment, which provided for a 7 days on/7 days off schedule, by ordering that A.J.B. remain in the physical custody of Ms. Bell and that A.J.B. visit with Mr. Williamson two to four hours per week. On June 14, 2022, Ms. Bell timely filed an objection to the commissioner's ruling insofar as it ordered that Mr. Williamson be permitted to resume having physical custody of A.B. according to the 7 days on/7 days off schedule set forth in the July 8, 2021 consent judgment.

The trial court then held a three-day contradictory hearing on both Ms. Bell's and Mr. Williamson's competing motions to modify custody, Mr. Williamson's rules for contempt, and Mr. Williamson's objection to a *Watermeier* hearing. There is no indication in the record, or in the trial judge's reasons for judgment, that she ever considered the commissioner's June 10, 2022 judgment (signed June 16, 2022), or any of the prior judgments, a considered decree. Rather, the trial judge expressly stated that the commissioner's "ruling doesn't become final by operation of law unless someone does not file an objection, at which point his judgment becomes a final judgment. ... But because there were objections filed his judgment is not really a final judgment. It is a ruling and an order and a judgment but it is not treated by law as a final judgment because an objection was filed." Clearly, the trial judge did not consider the commissioner's interim order to be a "considered decree" of child custody.

Moreover, on numerous occasions throughout the trial, the trial judge explained to Mr. Williamson's counsel that she was trying all of the matters before the court *de novo*. In particular, the trial judge stated to the parties:

Again you have to understand once you're up here we're trying all of these rules De Novo. I do it De Novo. I don't read [the commissioner's] reasons and rubber stamp it. That's not what I consider to be De Novo hearing. Nor do I consider myself bound by any of the factual determinations that he made or any statements that he made in his reasoning or in fact what his actual rulings were. So none of those [rulings or orders] are binding here. So I want to say that for the record so everybody understands it's as if we are starting from a new slate.

La. R.S. 13:717(F)(4) provides that a commissioner's orders shall be interim:

> F. The powers of the commissioners hearing domestic matters shall include but not be limited to the power to:
>
> ***
>
> (4) Implement *interim* child support and custody
>
> *orders*. [Emphasis added.]

As this Court has previously stated, "[i]t is clear that if either party files an objection, the 'interim orders' of the domestic commissioners remain interim until the district court renders its judgment. Considering that a domestic commissioner's interim order to which a timely objection has been filed remains *interim* and is not a judgment of the court, and that the admission of new evidence during the district court hearing is contemplated by law, the hearing in the district court on the domestic commissioner's interim order of custody and visitation should be *de novo*, as is the district court's consideration of the interim orders of domestic hearing officers." *Garcia v. Hernandez*, 21-338 (La. App. 5 Cir. 4/11/22), 339 So.3d 61, 68).[5]

---

[5] *See also Dugue v. Dugue*, 17-525 (La. App. 5 Cir. 6/27/18), 250 So.3d 1174, 1177-78, where this Court held that because the appellant had objected timely to the hearing officer's recommendations, the recommendations did not become a final judgment and that appellant was clearly entitled to a *de novo* review of the hearing officer's findings by the district court. This Court reiterated this holding in *Fairbanks v. Beninate*, 20-206 (La. App. 5 Cir. 12/23/20), 308 So.3d 1222, 1236, *writ denied*, 21-250 (La. 3/23/21), 313 So.3d 272. Additionally, in *Ariatti v. Plaisance*, 18-84 (La. App. 5 Cir. 9/13/18), 255 So.3d 1239, 1249, we recognized a litigant's right to a district court's *de novo* consideration of a domestic commissioner's interim judgment.

A timely filed objection to a commissioner's interim judgment, even if that judgment "modifies" a prior custody arrangement, does not become a final judgment, and thus, is not a "considered decree." Here, we find the record clearly shows that the trial judge did not consider the commissioner's interim judgment, which did modify the custody arrangement the parties' exercised under the July 8, 2021 consent judgment, to be a "considered decree." After considering all of the testimony and evidence *de novo*, the trial judge determined that the evidence supported a finding of a change in circumstances materially affecting the children's well-being had occurred since the prior order of custody. Further, after her *de novo* review of the evidence, the trial judge concluded that it was in the best interest of the minor children for sole custody to be awarded to Ms. Bell.

This assignment of error is without merit.

### 2. *Custody Modifications made without Conducting a Contradictory Hearing*

In his second assignment of error, Mr. Williamson contends the trial judge improperly modified the July 8, 2021 consent judgment in chambers, without first conducting a contradictory hearing. The record does not support this contention.

According to Mr. Williamson, during a pre-trial conference held on September 8, 2022, the trial judge "ordered" that Mr. Williamson continue the custody schedule set forth in the commissioner's June 10, 2022 judgment, which modified the July 8, 2021 consent judgment. Mr. Williamson contends that there had been no contradictory hearing held to modify custody since the July 8, 2021 judgment. Thus, according to Mr. Williamson, the trial judge "modified custody" without first holding a contradictory hearing, violating his substantial rights to A.J.B. and A.B.

Mr. Williamson's argument, however, is based on the false premise that Ms. Bell's petition for sole custody, which also asked for temporary emergency relief

under La. C.C.P. art. 3945, was not a request for a modification of custody. Thus, according to Mr. Williamson, the three-day hearing held by Commissioner Bailey, which resulted in the June 10, 2022 interim judgment[6] modifying the parties' physical custody of the boys as set forth in the July 8, 2021 consent judgment, was not a contradictory hearing to modify custody, but rather a hearing solely on Ms. Bell's request for emergency temporary sole custody of the boys pursuant to La. C.C.P. art. 3945. Therefore, Mr. Williamson argues, that when the trial judge "ordered" that the parties were to continue the schedule in Commissioner Bailey's June 10, 2022 interim judgment, she modified custody without holding a contradictory hearing.

The minute entry for September 8, 2022, indicates that before the trial court for hearing that day were: (1) the parties' objections to the commissioner's June 10, 2022 interim judgment; (2) Mr. Williamson's motion to nullify all *ex parte* orders and judgments granting Ms. Bell sole custody of the minor children and suspending Mr. Williamson's physical custody pursuant to La. C.C.P. art. 3945; (3) Ms. Bell's exceptions to Mr. Williamson's motion to nullify: and (4) Ms. Bell's motion for a *Watermeier* hearing. The minute entry also reflects that "after having an extensive pre-trial conference with the court," the matters were continued to another date. Later, in her March 21, 2023 reasons for judgment, which granted a subsequent motion to again continue trial of the matters set forth above, the trial judge specifically stated that "the Court would not disturb the Commissioner's ruling without an evidentiary hearing." The trial judge's decision to continue the custody schedule set forth in Commissioner Bailey's June 10, 2022 judgment until she could try the matter *de novo*, was not, as Mr. Williamson suggests, a "change of custody without conducting a contradictory hearing." As previously stated, "if either party files an objection, the 'interim orders' of the domestic commissioners

---

[6]   This interim judgment was not signed by Commissioner Bailey until June 21, 2022.

remain interim until the district court renders its judgment." *See Garcia*, 339 So.3d at 68. At the time of the pre-trial conference held in chambers on September 8, 2022, the commissioner's June 10, 2022 interim judgment, which returned A.B. to the 7 days on/7 days off custody arrangement in the July 8, 2021 consent judgment, remained in effect—and continued to be in effect—until July 5, 2023, when the trial court issued its final judgment awarding sole custody of the boys to Ms. Bell and visitation with Mr. Williamson every other Saturday and Sunday. This assignment of error is without merit.

### 3. *Trial of Objections in District Court*

In his third assignment of error, Mr. Williamson avers the trial court committed legal error by failing to decide Ms. Bell's objection to the commissioner's interim judgment *de novo*. He contends that by failing to include consideration of the record, evidence, and testimony from the hearing before Commissioner Bailey as part of her *de novo* review, the trial judge violated his "substantial rights to a fair, just, and impartial trial that considers all relevant evidence." We disagree.

Mr. Williamson argues that, when reviewing an objection to a domestic commissioner's interim judgment, the trial judge may only (1) decide the objection based on the record of the proceeding before the commissioner or (2) receive further evidence and rule based on that evidence, together with the prior evidence, or (3) recommit the matter to the commissioner with instructions. *See* La. R.S. 13:717(F)(4)(c). He further argues that *de novo* review of an objection to the domestic commissioner's ruling is mandatory, and that "*de novo*" means that the district court may consider both new evidence and evidence previously admitted in the domestic commissioner's hearing, weighing together the evidence as a whole. *See Garcia*, *supra*, 339 So.3d at 68.

According to Mr. Williamson, in conducting her *de novo* review, the trial judge failed to review the record of the hearing before Commissioner Bailey and refused to allow any discussion of any evidence and testimony from that hearing. Instead, he claims the trial judge erroneously decided Ms. Bell's objection strictly on the evidence that she received at trial, in violation of La. R.S. 13:717.

A review of the record suggests otherwise. La. R.S. 13:717(F)(4)(c) provides that the trial "judge *may* decide the objection based on the record of the proceedings before the commissioner or *may* receive further evidence and rule based on that evidence, together with the prior evidence, or *may* recommit the matter to the commissioner with instructions." [Emphasis added.] What deference or weight a trial judge gives to the record of a hearing before the domestic commissioner is within the trial court's discretion. *See Garcia*, 339 So.3d at 68. A trial court, in its *de novo* review, is not bound by the rulings of the domestic commissioner. Contrary to Ms. Williamson's assertions, under La. R.S. 13:717(F)(4)(c), the trial court, if it so chooses, can simply conduct an entirely new hearing on the matters before it without regard to any of the evidence considered or rulings made by the commissioner.

The appellate record further indicates the trial judge did, in fact, consider both new evidence as well as evidence that was previously presented to the commissioner. Specifically, the record shows the trial judge considered the transcript testimony of Dr. Marvin Clifford and his medical records for both A.J.B. and A.B. from Ochsner hospital;[7] the Children's Hospital records from March 30, 2022; and, the school's records regarding the March 30, 2022 incident involving A.J.B. In addition to this evidence introduced at the hearing before Commissioner Bailey, the trial judge also considered new evidence, including the psychological evaluation of Dr. Kristen Luscher; the trial testimony and custody evaluation report

---

[7] Dr. Clifford was A.J.B. and A.B.'s therapist for over a year, but was deceased at the time of trial.

of Dr. Karen van Beyer; the trial testimony and records of Martha Bujana; and, the trial testimony of both A.J.B. and A.B. The trial judge further considered the trial testimony of Ms. Bell and Mr. Williamson, who had both previously testified before the commissioner.

Based on our review of the record before us, we find the trial judge properly conducted a trial *de novo* on the objections to Commissioner Bailey's interim judgment in accordance with La. R.S. 13:717(F)(4)(c), and this Court's decision in *Garcia*. We conclude that this assignment of error is without merit.

### 4. *Standard Applied to Mr. Williamson's Motion to Modify Custody*

In his final assignment of error, Mr. Williamson avers the trial court committed legal error by applying the standard set forth in *Bergeron v. Bergeron*, 492 So.2d 1193 (La. 1986), to his motion to modify custody, thereby depriving him of his substantial right to raise A.J.B. and A.B., even though he proved at trial that there had been a change in circumstances since the July 8, 2021 consent judgment, and that it was in the best interest of A.J.B. and A.B. to live with him.

Once again, the record before us refutes Mr. Williamson's contention. As previously stated, before the trial court were, among other exceptions and motions, the parties' competing motions to modify custody. Specifically, before the trial court was Ms. Bell's petition for sole custody, to suspend physical custody, and *ex parte* order pending a trial on the merits, which she filed on April 6, 2022, in response to the school incident involving A.J.B. and his threat to commit suicide if he was forced to go to his father's home. Ms. Bell's petition included a request for emergency relief under La. C.C.P. art. 3945 to suspend Mr. Williamson's physical custody of both boys pending a hearing on the merits of her motion for sole custody. Also before the trial court was Mr. Williamson's motion for contempt and to modify custody, which he filed on May 2, 2022, alleging a change of circumstances based on Ms. Bell's refusal to allow him physical custody of the

24-CA-6                                      18

boys on March 30-31, 2022, April 8-14, 2022, and April 22-28, 2022. Mr. Williamson also alleged that a modification was warranted due to Ms. Bell's "discontent" for the trial court's orders and her attempt to alienate the boys from him.

Contrary to Mr. Williamson's contention that the trial court erroneously applied the *Bergeron* standard when considering his motion to modify custody, the transcript from the hearing, as well as the trial court's extensive written reasons for judgment, show that the reason the trial court denied his motion to modify custody was because Mr. Williamson failed to show a change in circumstances. In particular, the trial court found that Mr. Williamson's motion to modify custody was based on Ms. Bell's alleged contemptuous behavior in denying him physical custody of the boys, despite the fact that there was a doctor's order releasing A.J.B. from the hospital with the restriction that he was to remain in the physical custody of his mother, as well as an April 8, 2022 order suspending Mr. Williamson's physical custody of the boys pending a hearing on Ms. Bell's petition for sole custody. In short, Mr. Williamson posited that the granting of emergency relief to Ms. Bell pursuant to La. C.C.P. art. 3945, which suspended his physical custody of the boys, constituted a material change in circumstance warranting a change of custody in his favor.[8] At trial, Mr. Williamson's counsel confirmed on the record that this was the sole basis for Mr. Williamson's filing a motion to modify custody.

In denying the motion, the trial court determined that Mr. Williamson was not entitled to a modification of custody based merely upon the fact that custody was modified in a prior judgment. The trial court "disagree[d] that a judgment modifying custody is a change of circumstances warranting its own reversal,"

---

[8] In essence, Mr. Williamson contends that Ms. Bell's compliance with Dr. Grace Banuchi's March 30, 2022 discharge instructions from Children's Hospital's that A.J.B. remain in the care of his mother "until all is cleared due to child's safety and risk of suicide," the April 7, 2022 *ex parte* award of temporary sole custody of A.J.B. and A.B. to Ms. Bell, and the commissioner's June 10, 2022 interim judgment (signed on June 21, 2022) that modified custody, constituted a "change in circumstances" that warranted a modification of custody.

stating that "[t]his contention is nonsensical and without merit." There is absolutely no mention of *Bergeron* in relation to the trial court's denial of Mr. Williamson's motion to modify, thus there is no indication that the trial court applied the *Bergeron* standard in denying his motion.

Mr. Williamson again avers the trial court erroneously treated Commissioner Bailey's June 10, 2022 interim judgment as a considered decree, and thus her application of the *Bergeron* standard in this matter was improper and constituted legal error. We disagree. As previously stated in our discussion of Mr. Williamson's first assignment of error, the trial court did not consider the June 10, 2022 interim judgment (signed on June 21, 2022), a considered decree and specifically acknowledged that it was not a final judgment based on the parties' objections to that interim judgment.

In addition, Mr. Williamson argues the trial judge "ignored the court appointed expert custody evaluators, and other evidence supporting [his] motion to modify custody," and concluded that he "had not met the burden of proof necessary to modify custody, applying *Bergeron*." The appellate record simply does not support this contention.

It is well-settled in Louisiana that the trier of fact is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. *McCaffery v. McCaffery*, 13-692 (La. App. 5 Cir. 4/9/14), 140 So.3d 105-116-17. Thus, the effect and weight to be given expert testimony is within the broad discretion of the trial court, who may accept or reject in whole or in part the opinion expressed by an expert. *Id.* The decision reached by the trial court regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its broad discretion. *Allensworth v. Grand Isle Shipyard, Inc.*, 15-257 (La. App. 5 Cir. 10/28/15), 178 So.3d 191, 197. The factual basis for an expert opinion determines the credibility of the testimony. *Id.* at 868.

In the trial court's written reasons for judgment, which we acknowledge form no part of the judgment,[9] and after reviewing the testimony given at trial, it is clear that, while the trial judge considered the testimony and report of Dr. van Beyer, she evidently rejected both, finding that Dr. van Beyer's opinions were based on a faulty premise, and not based on all of the evidence. In particular, Dr. van Beyer's trial testimony reveals that she was not provided with a copy of Ms. Bell's petition for sole custody and emergency relief pursuant to La. C.C.P. art. 3945, nor a copy of Commissioner Bailey's June 10, 2022 interim judgment (signed on June 21, 2022). Additionally, Dr. van Beyer's report stated her opinion that "the issues in the present updated evaluation remain the same as in the evaluation conducted by Ms. [Shewayn] Watson." Because the parties entered into the July 8, 2021 consent judgment in lieu of adopting Ms. Watson's recommendations, coupled with A.J.B.'s recent threat of suicide, the circumstances and issues were clearly not "the same" as opined by Dr. van Beyer. Thus, the trial judge concluded that Dr. van Beyer's opinions and report were not credible and were of limited use.

At trial, Dr. van Beyer was adamant in her belief that A.J.B. was "making up" his accusations, or at the very least exaggerating them, including his threat of suicide and physical abuse by his father, in order that he could accompany his great aunt and grandfather on a cruise that was scheduled for several months later. In her written reasons for judgment, the trial judge stated that "[i]t shocks the senses that Dr. van Beyer would ignore the complaints of physical and emotional abuse [A.J.B.] has reported to multiple mental health professionals, and dismiss it as being untruthful especially considering Dr. van Beyer was present in the courtroom

_____

[9]      We note the well-settled rule that a trial court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment. *E.R. v. T.S.*, 18-286 (La. App. 5 Cir. 10/11/18), 256 So.3d 551, 563, *writ denied*, 18-1843 (La. 2/18/19), 264 So.3d 451. Nevertheless, a court of appeal may review the lower court's reasons "to gain insight" into the court's judgment. *Id.*

during Ms. Bujanda's testimony wherein she stated that [Mr. Williamson] admitted to some of these behaviors in their therapy sessions." Additionally, the trial court denied admission or consideration of the former custody evaluator's report prepared by Ms. Watson, which Mr. Williamson claimed reached the same recommendations and conclusions as Dr. van Beyer, on the basis that Ms. Watson's recommendations were never implemented and because she never testified under oath at any hearing. We find no abuse of the trial court's decision to reject this evidence and testimony.

This assignment of error is also without merit.

## CONCLUSION

For the foregoing reasons, and finding no merit to Mr. Williamson's assignments of error, we affirm the trial court's judgment awarding sole custody of the minor children to Nadia Bell, and awarding visitation to Anthony Williamson every other Saturday and Sunday, from 12:00 p.m. to 6:00 p.m.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 22, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-CA-6**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
TILTON R. HUNTER, JR. (APPELLANT)          RENEE L. SWANSON (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED